SHAW, Justice.
Alfa Mutual Insurance Company (“Alfa”), the defendant below, petitions this Court for a writ of mandamus directing the St. Clair Circuit Court to vacate its order denying, and to enter an order granting, Alfa’s motion to strike the amended complaint filed by the plaintiffs, Ronald Gene Lang and Mary F. Lang, in connection with a dispute arising from a farm-owner’s policy of insurance issued to the Langs by Alfa. We grant the petition and issue the writ.

Facts and Procedural History

In 1984, the Langs purchased a farm-owner’s policy from Alfa. At the time the policy was originally issued, it covered three structures identified in the policy: a tenant dwelling, a pump house, and a 1,000-square-foot barn. Following the purchase of the policy, the Langs demolished the existing 1,000-square-foot barn and, in 1994, constructed a new 1,600-square-foot “pole barn with a metal roof.” Pet. Exh. L, at 4. That same year, the pole barn sustained wind damage for which the Langs submitted a claim and were paid by Alfa under the policy.
The Langs then rebuilt the damaged pole barn and, in 1994 or 1995, also constructed a second 3,500-square-foot barn. The Langs assert that, at or around that same time, they orally requested that their Alfa agent, Jim Shigley, during one of his purportedly regular visits to the Langs’ farm, add both bams to the Langs’ existing coverage and that Shigley responded with a promise that he would “take care of it.” Pet. Exh. 0. Also in 1995, the Langs completed an application to renew their policy in which they requested that coverage for the original 1,000-square-foot barn be deleted and coverage on the pump house be increased by $1,000; the application, however, did not include a written request adding coverage for the two new barns. Similarly, the declaration issued in 2001 in connection with the Langs’ continued policy renewal reflected coverage for only two structures on the Langs’ farm: the tenant dwelling and the pump house. Although they were not specifically able to recall having received renewed declarations with their corresponding billing statements, the Langs do not appear to argue that they did not.
In 2002, the Langs again completed a written application for renewal of their policy in which they requested that coverage on the pump house be deleted and coverage on the tenant dwelling increased. The corresponding declaration page reflects those changes and indicates that the only remaining structure covered by the policy was the tenant dwelling. In 2006, the Langs sold the tenant dwelling. In connection with that sale, the Langs maintain that they telephoned Shigley to orally request that the tenant dwelling be deleted from their policy coverage; however, the Langs never received written confirmation of the deletion and the amount of their premium payments did not change. The declaration pages issued in connection with the Langs’ policy renewals in the ensuing years show that no change to the covered structures was ever effected and that, instead, as of 2013, coverage in the amount of $30,000 for the tenant dwelling—and only the tenant dwelling—remained.
In March 2013, both barns located on the Langs’ farm allegedly suffered storm damage. Following the Langs’ notification of Alfa of the barn-related claim, Alfa denied the request for payment. Specifically, Alfa notified the Langs’ attorney by letter dated April 3, 2013, that a review of the Langs’ policy revealed “no record of *917 coverage for the barn in which [the Langs had] claimed damage.” Pet. Exh. O.
Thereafter, a dispute arose between the Langs and Alfa as to whether the Langs’ policy afforded coverage for the two barns located on the Langs’ farm. On April 18, 2013, the Langs sued Alfa, alleging bad-faith failure to pay, bad-faith failure to investigate, and breach of contract. In response, Alfa moved to “dismiss” the Langs’ complaint on the ground that, pursuant to the language of the Alfa policy, “Barns, Outbuildings and Other Farm Structures” were covered only where “a Limit is shown in the Declarations for the specifically described property.” Pet. Exh. B, at 3. More specifically, Alfa noted that the declarations in the Langs’ policy included neither a “limit” relating to nor a specific description of any such farm structure excepting the tenant dwelling; thus, Alfa argued, the barn-damage claim was clearly not covered by the Alfa policy. The trial court denied both Alfa’s motion and a subsequent request that the trial court reconsider that denial. Pet. Exh. D, at 1.
According to Alfa, at the hearings conducted by the trial court on the motion to dismiss, “counsel for the Langs argued theories of liability that were not stated in the Complaint.” Pet., at 2. Therefore, in an e-mail message dated September 11, 2013, Alfa’s counsel inquired of the Langs’ attorney whether the Langs planned to amend their original complaint and, if so, requested that such an amendment be “promptly” filed so that Alfa might address the amendment in its answer. Pet. Exh. Q. Apparently, the Langs’ attorney did not respond, and Alfa filed its answer to the original complaint. The Langs’ deposition testimony, subsequently taken in May 2014, revealed the Langs’ acknowledgment that the barns were not included among the insured structures identified on the declarations page and “[t]hat’s what [they are] saying is the problem.” Pet. Exh. Q.
In September 2014, again via e-mail, Alfa inquired of the Langs’ attorney, in connection with its preparations to file a motion seeking a summary judgment, whether the Langs intended to depose Shigley. The Langs’ counsel responded in the affirmative and promised to provide, by the following week, possible dates for that deposition. Further communications between the parties in October 2014, however, revealed that Shigley’s deposition was never scheduled. Apparently unbeknownst to Alfa, Shigley, who had retired, died in September 2014.
In January 2015, Alfa notified the Langs’ attorney that, despite the fact that Shigley had not been deposed, it was, in light of the impending trial date,[1] proceeding with the filing of its summary-judgment motion. Thereafter, on January 19, 2015, Alfa filed a summary-judgment motion explaining the foregoing facts and attaching, among other exhibits, all policy-related documentation. In their response in opposition to that motion, the Langs appeared to raise fraud-based claims surrounding Shigley’s alleged misrepresentation to them that coverage for the barns had been added to the Langs’ policy.
The matter was set for trial and was continued on at least four occasions. Thereafter, in connection with further discovery efforts by the Langs, Alfa again asked whether the Langs intended to amend their original complaint and, again, allegedly received no response from the Langs’ attorney. On April 10, 2015—al-most exactly two years from the filing date *918 of their original complaint—the Langs filed an amended complaint, which added a fictitiously named defendant identified as the party “whose responsibility it was to inspect the property of the Langs, to insure their farm policy provide[d] adequate coverage and/or that the Langs were not paying for insurance to property which they did not own.” Pet. Exh. P. The Langs’ complaint, as amended, added new counts asserting negligence and fraudulent/reckless misrepresentation and an additional breach-of-contract claim.
In response, Alfa filed a motion to strike the amended complaint on numerous grounds, including that it had allegedly been filed in violation of Rule 15(a), Ala. R. Civ. P.; that, in addition to having purportedly been filed after the expiration of the statute of limitations applicable to the newly added claims, the amended complaint was also filed without first obtaining leave of the trial court; that the amendment was prejudicial to Alfa in that it was filed after the death of a key witness, namely, Shigley, the Langs’ Alfa agent, who had not been deposed before his death; and that the newly asserted claims were ultimately “futile” in light of “Alabama’s strict duty to read” an insurance policy. Pet. Exh. Q.
The Langs opposed Alfa’s motion to strike, arguing that their amended complaint was neither untimely, prejudicial, nor “futile.” Thereafter, on May 27, 2015, the trial court entered an order denying Alfa’s summary-judgment motion and its motion to strike and allowing the Langs’ amended complaint on the ground that that court was unable to “conclude that ... [the Langs] have not shown good cause to amend.” Pet. Exh. S. Alfa filed this petition for a writ of mandamus, and this Court ordered answers and briefs.

Standard of Review

“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue to compel the exercise of a trial court’s discretion, but it will not issue to control or to review a court’s exercise of its discretion unless an abuse of discretion is shown. Ex parte Auto-Owners Ins, Co., 548 So.2d 1029 (Ala.1989). If the remedy by way of appeal is adequate, as is usually the case with rulings allowing or disallowing amendments, we will decline to grant the writ; in those cases in which an appeal does not provide an adequate remedy, we will issue the writ. Ex parte Miller, 292 Ala. 554, 297 So.2d 802, 805 (1974). See, also, Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So.2d 645 (1975).”
Ex parte Yarbrough, 788 So.2d 128, 132 (Ala.2000). “A writ of mandamus ,.. will issue to correct a trial court’s ruling regarding the amendment of pleadings ... when it is shown that the trial court has exceeded its discretion.” Ex parte Liberty Nat’l Life Ins. Co., 858 So.2d 950, 952 (Ala.2003) (citing Rector v. Better Houses, Inc., 820 So.2d 75 (Ala.2001)).

Discussion

In its petition, Alfa argues that the trial court exceeded its discretion in denying Alfa’s motion to strike the Langs’ amended complaint for several reasons.
With regard to amendments filed pursuant to Rule 15, this Court has stated:
*919 “‘Rule 15(a), Ala. R. Civ. P., reflects Alabama’s liberal policy in favor of allowing amendments to pleadings:
“ ‘ “Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the c'ase for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, 'a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause....” '
[[Image here]]
“‘We noted in Ex parte GRE Insurance Group, 822 So.2d 388, 390 (Ala.2001), that under Rule 15 amendments to - pleadings are to be “freely allowed” unless there exists some valid reason to deny them, such as “actual prejudice or undue delay[.]”
[[Image here]]
“ When, as here, the amendment is sought within the 42-day window, the trial court is free to deny a party leave to amend his or her pleading unless the party can demonstrate “good cause.” ... However, in light of the overarching liberal policy of allowing amendments under Rule 15, the appropriate way to view the request for leave to amend, if a party demonstrates “good cause,” is as though the request had been brought more than 42 days before trial, when the trial court does not have “unbridled discretion” to deny the leave to amend, but can do so only upon the basis of a “valid ground” as stated above.’
“Liberty National, 858 So.2d at 953-54.
“In Blackmon v. Nexity Financial Corp., 953 So.2d 1180, 1189 (Ala.2006), this Court noted:
“‘Rule 15[, Ala. R. Civ. P.,] “‘is not carte blanche authority to amend ... at any time.’” Burkett v. American Gen. Fin., Inc., 607 So.2d 138, 141 (Ala.1992) (quoting Stallings v. Angelica Uniform Co., 388 So.2d 942, 947 (Ala.1980)).... The trial court can refuse to allow an amendment if allowing it would result in actual prejudice to the opposing party or for reasons of “undue delay.” [Ex parte] GRE Ins. Group, 822 So.2d [388,] 390 [(Ala. 2001) ].
“ ‘Undue delay can have two different meanings in a case. First, the trial court has discretion to deny an amendment to a pleading if allowing the amendment would unduly delay the trial. Second, an unexplained undue delay in filing an amendment when the party has had sufficient opportunity to discover the facts necessary to file the amendment earlier is also sufficient grounds upon which to deny the amendment.’
“The Court in Blackmon went on to say that the trial court had not exceeded its discretion in denying Blackmon’s motion to amend his complaint because the trial court had found that ‘Blackmon was aware of the facts justifying the amended complaint when he filed his original complaint,’ and because the trial court had found that ‘the amendment would require additional discovery and would substantially delay the trial setting.’ Id. at 1189-90.”
Ex parte DePaola, 46 So.3d 884, 886-87 (Ala.2010).
The parties appear to agree, and the trial court also apparently concluded, that, because the Langs’ amended complaint was filed far later than 42 days *920 before the date of the initial trial setting, the Langs were required, in order to obtain leave to amend their original complaint, to demonstrate “good cause.” Pet. Exh. R. Alfa argues that the trial court erred in concluding that the Langs demonstrated good cause for the purportedly “excessive[ ]” delay in amending their complaint. Pet., at 19. It further contends that the claims added by the alleged untimely amendment are based on facts that were undisputedly known to the Langs before the Langs filed their original complaint and that the amendment is “highly prejudicial to Alfa” in that it was filed after the demise of a key witness to the claims asserted in the amended complaint. Pet., at 12. Applying the DePaola factors of actual prejudice and undue delay, we agree.
As Alfa argues, the amended complaint is clearly prejudicial to Alfa in that it alleges new claims to which a recently deceased witness, namely Shigley, would indisputably have been key to Alfa’s successful defense. See, e.g., Liberty National, 858 So.2d at 954 (“ ‘ “In the context of a [Rule] 15(a) amendment, prejudice means that the nonmoving party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely.” ’ ” (quoting Ex parte GRE Ins. Grp., 822, So.2d 388, 391 (Ala.2001), quoting in turn Heyl & Patterson Int’l v. F.D. Rich Hous. of Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir.1981))). The Langs go to great lengths to explain that they are not complaining about actions or omissions on Shigley’s part but, instead, by his successor or successors, who allegedly failed to inspect the farm, which action, the Langs maintain, would have led to the discovery that they were paying for insurance on a structure that they no longer owned and that they did not have coverage on structures that were obviously present. Regardless of who is responsible for the alleged error, it is undisputed that the Langs received from Alfa written notification that the barns were not included in the Langs’ coverage. Moreover, although the Langs deny being aware of their continued premium on the tenant dwelling, it is also clear that their declarations page in the 2013 policy clearly indicated that coverage. Further, as the Langs also acknowledged, their premium never decreased after they purportedly sought to delete coverage on the tenant dwelling. Thus, although discovery might have disclosed additional purported omissions, including those the Langs maintain occurred after Shigley’s retirement, as Alfa observes, the Langs knew or should have known, at the time they filed their original complaint, what coverage their policy afforded and, more importantly, what coverage it did not. See Blackmon, supra; De-Paola, supra. As a result, the Langs’ undue delay in amending their complaint appears inexplicable when they clearly had sufficient opportunity to discover the facts that were the basis of their claims.
The Langs dispute that Alfa was, as the petition alleges, prejudiced by the late amendment. As the Langs note, this Court has concluded that an amendment that “merely changes the legal theory of a case or adds an additional theory ... based upon the same set of facts” already known to the opposing party works “no prejudice ... upon the other party.” Bracy v. Sippial Elec. Co., 379 So.2d 582, 584 (Ala.1980). We see nothing in Bracy, however, as is true in the present case, to indicate that numerous earlier urgings to amend the complaint occurred when an alternate theory of recovery originally surfaced. There is also nothing in Bracy suggesting that the amendment occurred after the death of an indispensable witness. *921 As Alfa notes, Shigley appears to have been the only person able to testify regarding, and, more specifically, to refute, the Langs’ assertion that they requested coverage changes that were not reflected in the policy. Thus, Bracy is factually distinguishable.
The Langs faded to demonstrate good cause—or, in fact, any cause—for the excessive delay in amending their complaint when they knew or should have known of the claims before or at the time they filed their original complaint. Further, the claims were actually suggested by Alfa’s counsel. At the time the Langs filed their amendment, the case had been set for trial on several occasions, and the amendment would unduly prejudice Alfa, who, as a result of the Langs’ excessive delay, cannot fully and fairly defend against the claims added by the amendment because a key witness has died.
Alfa has demonstrated a clear legal right to the requested relief. We conclude that the trial court exceeded its discretion in allowing the Langs to amend their complaint so near the trial date in order to add claims based on facts that were or ought to have been known to the Langs well prior to that date. DePaola, supra. We therefore grant Alfa’s petition and direct the St. Clair Circuit Court to vacate its order denying Alfa’s motion to strike the Langs’ amended complaint and to enter an order granting that motion and striking the amended complaint.
PETITION GRANTED; WRIT ISSUED.
STUART, PARKER, WISE, and BRYAN, JJ., concur.

. Alfa argues that this suggested that Shig-ley's deposition was the only remaining discovery to be conducted before trial. Pet. Exh. T.