Rel: May 10, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0759

_____

**Ex parte Foremost Insurance Company, Grand Rapids, Michigan; Karen Bradford; and Bradford Agency, LLC**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Larry Knight**

**v.**

**Foremost Insurance Company, Grand Rapids, Michigan; Karen Bradford; and Bradford Agency, LLC)**

**(Clarke Circuit Court: CV-21-900014)**

COOK, Justice.

In October 2020, a residence owned by the plaintiff, Larry Knight, was damaged in Hurricane Zeta. Larry submitted an insurance claim to Foremost Insurance Company, Grand Rapids, Michigan ("Foremost"), for the damage, but that claim was denied. He then sued Foremost in the Clarke Circuit Court. Foremost made clear early in the litigation that it did not insure the residence.

Throughout the course of the litigation, Larry filed a total of six amended complaints, the last of which was filed after the first trial setting of this case. It was only when he filed his sixth amended complaint several years after he had initiated this case that Larry asserted causes of action related to a rental property that Foremost admittedly insured but for which he had never previously filed an insurance claim. During the course of those amendments, Larry also added Karen Bradford and Bradford Agency, LLC ("the Agency"), as defendants to his lawsuit.

Foremost moved to strike Larry's most recent amended complaint, while Karen and the Agency moved to quash service of process and to be dismissed from the case on the basis that service on them had been insufficient. After the trial court denied their respective motions,

2

Foremost, Karen, and the Agency petitioned this Court for a writ of mandamus. As explained below, because the petitioners have shown that they are entitled to relief, we grant the petition and issue the writ.

Facts and Procedural History

On January 22, 2014, Larry signed an application for a landlord-tenant insurance policy with Karen and the Agency that was underwritten by Foremost. The purpose of that policy was to insure a rental property located at 1805 Beth Street ("the rental property") in Thomasville. A few months after this occurred, the Agency was dissolved. Over five years later, Larry obtained a similar landlord-tenant insurance policy from Farmers Exchange, doing business as Farmers Insurance Company ("Farmers"), that was underwritten by Foremost for the rental property.

On October 28, 2020, a residence that Larry and his wife, Linda, owned at 1831 Beth Street ("the residence") in Thomasville sustained damage during Hurricane Zeta. According to Larry, because they were under the impression that their insurance policies with Foremost covered the residence, the Knights submitted an insurance claim for that

3

damage, which was ultimately denied.[1]

Several months later, Larry sued[2] Foremost and others,[3] asserting claims arising from the denial of the insurance claim for the damage suffered at the residence. In his complaint, Larry alleged bad-faith, fraud, negligent-procurement, and wanton-procurement claims against Foremost and the other defendants. He also sought compensatory and punitive damages.

Thereafter, Larry filed a series of amendments to his complaint.[4] On July 9, 2021, Larry filed his <u>third</u> amended complaint, which added Karen, among others, as a defendant -- purportedly in her capacity as an "agent, servant or employee of" Foremost. A "return on service" form filed

---

[1]The materials before us do not indicate that a claim was ever submitted for the rental property.

[2]Initially, Larry's wife, Linda, was also a plaintiff in the lawsuit; however, she was later removed as a plaintiff.

[3]Larry also named Farmers as one of the defendants in his complaint; however, Farmers was later dismissed from the lawsuit, with prejudice.

[4]Larry filed his first amended complaint on April 30, 2021, which added an unjust-enrichment claim against the defendants. Then, on May 3, 2021, he filed his second amended complaint, which added a breach-of-contract claim against the defendants.

with the circuit clerk indicated that, on September 10, 2021, Robert Barren, a process server, had personally delivered the summons and complaint to a person Barren identified as "Karen Bradford" at 348 Old Highway 5 in Thomasville.

In July 2021, Foremost filed its answer, admitting that it had issued a landlord-tenant insurance policy to the Knights for the rental property in Thomasville. However, it denied that it had done so for the residence. Foremost also asserted a variety of affirmative defenses.

In May 2022, Larry filed a fifth amended complaint, which added the Agency as a defendant. At that time, Larry requested that the Agency be served via certified mail. The certified-mail return receipt indicated that the Agency had been served on May 21, 2022, at 32620 Highway 43 in Thomasville and that a person named "Danny Brooks" had accepted service on the Agency's behalf.

In August 2022, Karen and the Agency each entered a limited appearance in this case for the purpose of moving to quash service of process and to dismiss them from the lawsuit on the basis of the "insufficiency of service of process."

In its motion, the Agency argued that it was due to be dismissed

from the case because of Larry's failure to properly serve its registered agent, Karen, with the summons and complaint. In support of its motion, the Agency attached an affidavit from Karen in which she explained that, although the Agency had been dissolved in 2014, before that dissolution she had been the registered agent designated to receive service of process for the Agency. She also stated that the purported service on the Agency via a person named "Danny Brooks" at 32620 Highway 43 was insufficient because the Agency no longer did business at that location and Brooks was not an agent for the company. In addition to Karen's affidavit, the Agency also attached to its motion documentation confirming its dissolution in 2014, a copy of the certified-mail return receipt for service, and copies of records from the Alabama Secretary of State's website listing Karen as the Agency's former registered agent.

Similarly, in her motion, Karen argued that, despite the details contained in the "return on service" form, she had never been personally served by Barren at 348 Old Highway 5 in Thomasville on September 10, 2021. Although Karen admitted that she used to live at the residence

located at that address with her ex-husband, Paul,[5] she maintained that she had not been living there at the time service on her was purportedly made. As a result, Karen argued that she should be dismissed from the lawsuit based on insufficient service. In support of her assertions, Karen attached both her own affidavit and an affidavit from Paul in which he stated that Karen "did not, and does not, reside at my residence and was not present at my residence on September 10, 2021." She also attached a copy of the summons.

Based on the materials before this Court, it does not appear that Larry filed a response to either the Agency's or Karen's motions. Following additional filings, the trial court initially set the case for trial, to begin on September 26, 2022.[6]

On August 11, 2023, Larry filed a sixth amended complaint in which he alleged for the first time that Foremost had sold, issued, and serviced an insurance policy covering both the residence and the rental

_____

[5]According to the materials before us, Paul was also Karen's business partner at the Agency. However, when the two divorced in 2013, Karen was awarded the Agency in their divorce settlement. Although Paul was initially named as a defendant in the lawsuit, he was eventually dismissed, with prejudice.

[6]It later reset the trial date to November 6, 2023.

property. A few days later, Foremost moved to strike Larry's sixth amended complaint based on (1) his failure to obtain leave of the court to amend his complaint, as required under Rule 15(a), Ala. R. Civ. P., and (2) his excessive and unexplained delay in amending the complaint.

In response, Larry filed a motion for leave to file his sixth amended complaint. In support of his motion, Larry asserted that the amendment was based on information acquired during discovery conducted after the first scheduled trial date had been set and that such amendments are to be freely allowed and cannot be refused if the evidence will assist in resolving the merits of the action.

The trial court denied Foremost's motion to strike Larry's sixth amended complaint and granted Larry's motion for leave to file his sixth amended complaint. It also denied the motions to quash service filed by Karen and the Agency. This petition followed.

## Standard of Review

It is well settled that

"[a] writ of mandamus is an extraordinary remedy, and it will be 'issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv.

Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993). A writ of mandamus will issue to compel the exercise of a trial court's discretion, but it will not issue to control or to review a court's exercise of its discretion unless an abuse of discretion is shown. Ex parte Auto-Owners Ins. Co., 548 So. 2d 1029 (Ala. 1989). If the remedy by way of appeal is adequate, as is usually the case with rulings allowing or disallowing amendments, we will decline to grant the writ; in those cases in which an appeal does not provide an adequate remedy, we will issue the writ. Ex parte Miller, 292 Ala. 554, 297 So. 2d 802, 805 (1974). See, also, Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So. 2d 645 (1975)."

Ex parte Yarbrough, 788 So. 2d 128, 132 (Ala. 2000).

## Discussion

This mandamus petition presents two distinct issues for our consideration: (1) whether Foremost has a clear legal right to have Larry's sixth amended complaint struck and (2) whether Karen and the Agency have a clear legal right to quash service and have Larry's claims against them dismissed because of insufficient service. We will address each issue in turn.

### I. Foremost's Motion to Strike Larry's Sixth Amended Complaint

With regard to a trial court's ruling on a motion to strike an amended pleading, this Court has previously stated:

"'If the remedy by way of appeal is adequate, as is usually the case with rulings allowing or disallowing amendments, we will decline to grant the writ [of mandamus]; in those cases in

9

which an appeal does not provide an adequate remedy, we will issue the writ. Ex parte Miller, 292 Ala. 554, 297 So. 2d 802, 805 (1974). See, also, Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So. 2d 645 (1975).'"

Ex parte Alfa Mut. Ins. Co., 212 So. 3d 915, 918 (Ala. 2016) (quoting Ex parte Yarbrough, 788 So. 2d at 132). "'A writ of mandamus ... will issue to correct a trial court's ruling regarding the amendment of pleadings ... when it is shown that the trial court has exceeded its discretion.'" Id. (quoting Ex parte Liberty Nat'l Life Ins. Co., 858 So. 2d 950, 952 (Ala. 2003)). "Because mandamus review of a trial court's ruling on a plaintiff's motion to amend his or her complaint is the exception, not the rule, it is incumbent upon a party seeking mandamus review of such a ruling to explain why an ordinary postjudgment appeal would not be adequate." Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 633 (Ala. 2020).

Foremost contends that the trial court exceeded its discretion in granting Larry's motion for leave to amend his complaint for a sixth time. According to Foremost, the allegations added by the amendment are based on facts that were undisputedly known to Larry before he filed his original complaint and allowing Larry to amend his complaint at this point in the litigation not only will unduly delay the trial in this matter, but also will be "highly prejudicial" to Foremost because, it says, it will

be forced to engage in a "trial by ambush." Applying the legal principles discussed below, we agree with Foremost.

In Ex parte Alfa Mutual Insurance Co., supra, this Court explained that, under Rule 15, Ala. R. Civ. P., amendments to pleadings are to be "'"'freely allowed' unless there exists some valid reason to deny them, such as 'actual prejudice or undue delay.'"'" 212 So. 3d at 919 (citations omitted). This Court has also explained, however, that the phrase "freely allowed" applies "only to those amendments sought 'more than forty-two (42) days before the first setting of the case for trial.' Rule 15, Ala. R. Civ. P." Ex parte Liberty Nat'l Life Ins., 858 So. 2d at 953 (emphasis added).

When, as in this case, the amendment is sought after the 42nd day preceding the first trial setting, the trial court is free to deny a party leave to amend his or her pleading unless the party can demonstrate "good cause." See Ex parte Alfa Mut. Ins., 212 So. 2d at 919 (recognizing that "'"[w]hen, as here, the amendment is sought within the 42-day window, the trial court is free to deny a party leave to amend his or her pleading unless the party can demonstrate 'good cause'"'" (citations omitted)). See also Rule 15. Even if "good cause" is demonstrated, however, our Court has stated that the denial of an amendment is

11

appropriate if allowing it would result in "actual prejudice" to the opposing party or would cause "undue delay." See id. at 919.

In support of his motion for leave to amend, Larry asserted that "good cause" existed for allowing him to amend his complaint for a sixth time because the amendment was "based on the evidence accumulated during discovery." However, Larry did not actually identify what that evidence was.

As Foremost notes, in his sixth amended complaint, Larry alleged, for the first time, that Foremost had sold, issued, and serviced an insurance policy covering both the residence and the rental property. Larry further alleged, for the first time in his sixth amended complaint, that Foremost had improperly denied claims for both the residence and the rental property, thus entitling him to compensatory and punitive damages.

Copies of Larry's insurance-policy documents show that Foremost insured only the rental property. There is nothing in the materials before us that indicates that Foremost also insured the residence. Additionally, as Foremost notes, in its July 2021 answer -- filed more than two years before Larry attempted to amend his complaint for the sixth time --

Foremost stated that the only insurance policy it had issued to Larry was for <u>the rental property</u>; it expressly denied having issued a policy for <u>the residence</u>.

This Court has recently explained that "good cause" cannot be shown when a plaintiff knows or should have known the facts supporting the proposed amendment at the time he or she filed the original complaint. <u>Ex parte Alfa Mut. Ins.</u>, 212 So. 3d at 919-20. Based on the materials before us, it seems apparent that the facts underlying the new allegations in Larry's sixth amended complaint -- specifically, that the insurance policy issued to Larry by Foremost covered the rental property -- were undisputedly known to Larry both before he filed his original complaint and before any discovery was conducted in the case. We therefore agree with Foremost that Larry failed to demonstrate that "good cause" existed for allowing him to amend his complaint for a sixth time.

Moreover, even if Larry had demonstrated that good cause existed for him to obtain leave to amend his complaint for a sixth time, as stated previously, our Court has held that denial of an amendment is appropriate if allowing it would result in "actual prejudice" to the

13

opposing party or would cause "undue delay." Ex parte Alfa Mut. Ins., 212 So. 3d at 919.

To demonstrate "actual prejudice," our Court has previously explained that

> "'"the nonmoving party 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely.'" [Cuffy v. Getty Ref. & Mktg. Co., 648 F. Supp. 802, 806 (D. Del. 1986)] ... (Quoting Heyl & Patterson Int'l v. F.D. Rich Housing of Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir. 1981).)'"

Ex parte Liberty Nat'l Ins., 858 So. 2d at 954 (quoting Ex parte GRE Ins. Grp., 822 So. 2d 388, 391 (Ala. 2001)). Regarding "undue delay," our Court has recently explained:

> "'"Undue delay can have two different meanings in a case. First, the trial court has discretion to deny an amendment to a pleading if allowing the amendment would unduly delay the trial. Second, an unexplained undue delay in filing an amendment when the party has had sufficient opportunity to discover the facts necessary to file the amendment earlier is also sufficient grounds upon which to deny the amendment."'"

Ex parte Alfa Mut. Ins., 212 So. 3d at 919 (quoting Ex parte DePaola, 46 So. 3d 884, 886-87 (Ala. 2010), quoting in turn Blackmon v. Nexity Fin. Corp., 953 So. 2d 1180, 1189 (Ala. 2006)).

Foremost argues that allowing Larry to amend his complaint for a

14

sixth time will result in actual prejudice and will unduly delay the trial in this case. Specifically, Foremost contends that if this case proceeds to trial, it will be forced to partake in a "trial by ambush," defending against claims for which it has been given no notice or information.

In response, Larry contends that Foremost's arguments are "moot" because the case is "currently not set for trial." Other than making this blanket assertion, however, Larry does not otherwise demonstrate how allowing him to amend his complaint for a sixth time will not prejudice Foremost or cause the trial in this case to be unduly delayed.

Additionally, there is nothing in the materials before us that indicates that the case is not currently set for trial. Allowing Larry to amend his complaint for the sixth time to allege <u>new</u> claims that Foremost had sold, issued, and serviced an insurance policy covering <u>both</u> the residence <u>and</u> the rental property will almost certainly result in actual prejudice to Foremost. It not only forces Foremost to defend against claims that now include the rental property, but also deprives Foremost of the opportunity to "'"present facts or evidence which it would have offered had [Larry's] … amendment[] been timely."'" <u>Liberty Nat'l Ins.</u>, 858 So. 2d at 954 (citations omitted).

15

Allowing the amendment will also unduly delay the trial because it now requires additional discovery to be conducted by the parties. We see no reason to allow this to happen given that Larry has not disputed that he had prior knowledge of the facts underlying his amendment and has failed to explain why he could not have filed this amendment sooner.

Because Larry was aware of the facts underlying the amendment when he filed his original complaint and because the amendment will almost certainly prejudice Foremost and unduly delay the trial, we conclude that the trial court exceeded its discretion in allowing Larry to amend his complaint for a sixth time.

## II. Karen's and the Agency's Motions to Quash Service

Karen and the Agency contend that the trial court erred in denying their motions to quash given that service had not been perfected upon them. In response, Larry contends that Karen and the Agency waived their challenges to the sufficiency of service of process by participating in some discovery in this case. However, before we can reach these issues, we must first address whether Karen and the Agency's challenges to the trial court's denials of their motions to quash service are subject to mandamus review.

A. Is the Trial Court's Denials of Karen's and the Agency's Motions to Quash Service Reviewable by Mandamus?

With regard to a trial court's denial of a motion to quash service, this Court has previously explained:

"'In Ex parte Helveston, 267 Ala. 94, 100 So. 2d 7 (1957), this court stated that the writ of mandamus is not the proper vehicle for the review of a denial of a motion to quash service, since the dispute over proper service can be settled on appeal. Again, in Orkin Exterminating Co. of North Ala. v. Krawcheck, 271 Ala. 305, 312, 123 So. 2d 149, 156 (1960), it was stated on rehearing that "[w]e do not review the action of the trial court in refusing to quash the summons in such a case by extraordinary writs. The error, if any, must be raised on appeal from the final judgment."'"

Ex parte Maxwell, 812 So. 2d 333, 335-36 (Ala. 2001) (quoting Ex parte Volkswagenwerk Aktiengesellschaft, 443 So. 2d 880, 881-82 (Ala. 1983)). This general rule is consistent with Alabama statutory authority, which provides:

"A party may raise the defenses of (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process and, losing thereon, proceed to litigate on the merits; and, losing on the merits, the party may appeal and, on appeal, attack the judgment both on the merits and on such grounds (1) through (5) as he urged below."

§ 6-8-101, Ala. Code 1975 (emphasis added).

However, the fact that the defenses listed above can be raised on

appeal from a final judgment does not mean that they cannot also be raised in a mandamus petition challenging an interlocutory order. In fact, our Court has held numerous times that rulings on issues pertinent to some of the defenses enumerated above, such as subject-matter jurisdiction, personal jurisdiction, and venue, can be reviewed by way of a mandamus petition because, "'[i]f a court lacks jurisdiction of a particular person, or if it denied that person due process, then the court's judgment is void.'" Ex parte Bashinsky, 319 So. 3d 1240, 1253 (Ala. 2020) (quoting Ex parte Pate, 673 So. 2d 427, 429 (Ala. 1995)). See Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d 1060, 1064 (Ala. 2014) (explaining that "[t]his Court has held that a writ of mandamus is an appropriate means by which to review the following: subject-matter jurisdiction, Ex parte Johnson, 715 So. 2d 783 (Ala. 1998); … personal jurisdiction, Ex parte Duck Boo Int'l Co., 985 So. 2d 900 (Ala. 2007); … a denial of a motion for a change of venue when venue has been challenged as improper, Ex parte Daniels, 941 So. 2d 251 (Ala. 2006) ….").

Although our Court has not expressly listed review of the denial of a motion to quash alleging insufficiency of service of process as a category subject to mandamus review, we have recognized that, like the defenses

18

discussed above, "[f]ailure of proper service under Rule 4[, Ala. R. Civ. P.,] deprives a court of jurisdiction and renders its judgment void." Ex parte Pate, 673 So. 2d at 428-29 (emphasis added). As noted above, a trial court's ruling on a motion asserting a lack of jurisdiction, such as subject-matter jurisdiction and personal jurisdiction, can be subject to mandamus review. See Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d at 1064. We have also on occasion "'allowed review by extraordinary writ'" of a trial court's rulings on such motions "'where the issue or issues presented also raised matters of substantial importance.'" Ex parte Maxwell, 812 So. 2d at 336 (quoting Ex parte Volkswagenwerk Aktiengesellschaft, 443 So. 2d at 882 (emphasis added).

For example, in Ex parte Volkswagenwerk Aktiengesellschaft, supra, Volkswagenwerk Aktiengesellschaft ("VWAG"), a German corporation, moved to quash service against it in a personal-injury action. In support of its motion, VWAG alleged that the purported service of process on Volkswagen of America ("VWOA") as the agent of VWAG, was improper because VWOA was merely a subsidiary of VWAG and, thus, had no authority to accept service of process on behalf of VWAG. After the trial court denied that motion, VWAG petitioned this Court for a writ

19

of mandamus.

In addressing this issue, our Court first noted that, generally, "the writ of mandamus is not the proper vehicle for the review of a denial of a motion to quash service, since the dispute over proper service can be settled on appeal." 443 So. 2d at 881 (citing Ex parte Helveston, 267 Ala. 94, 100 So. 2d 7 (1957)). Our Court also explained, however, that "we have allowed review by extraordinary writ, even in the face of a clear prohibition of its usage, where the issue or issues presented also raised matters of substantial importance." Id. at 882 (emphasis added).

Although our Court acknowledged that the matter before the trial court in that case was solely within the discretion of the trial judge, we nevertheless found that the case presented "a matter of importance beyond the basic issues in dispute." Id. Specifically, our Court explained:

> "If the writ of mandamus is denied, the only other method of attack open to the petitioner is to defend itself at trial, obtain a final judgment, and then appeal. To deny the writ, then, without consideration of VWoA's agency, would be to force VWAG to defend itself in a court that possibly lacks jurisdiction over it; this would be a denial of the German corporation's right to due process in American courts."

Id. Our Court therefore held that "matters of substantial importance" existed in the case, which justified reviewing the facts and arguments by

extraordinary writ.

Like our Court did in Ex parte Volkswagenwerk Aktiengesellschaft, supra, we hold that the present case presents "a matter of importance beyond the basic issues in dispute." Id. If we deny the present mandamus petition, the only other method of attack open to Karen and the Agency, with such a short period before trial, is to defend themselves at trial, obtain a final judgment, and then appeal that judgment to this Court on the ground that service was improper.

It would be a waste of judicial resources to permit a full trial against Karen and the Agency only to decide on appeal that the judgment must be reversed or vacated on the basis that the judgment was void because service on them was not properly perfected. See Ex parte Sealy, L.L.C., 904 So. 2d 1230, 1232 (Ala. 2004) (explaining that "[m]andamus will lie to direct a trial court to vacate a void judgment or order"). Because requiring Karen and the Agency to defend against Larry's action under the specific circumstances in this case would be in derogation of due process, we hold that, under the specific circumstances in this case, the facts and arguments presented by the parties on a motion to quash for improper service should be eligible for mandamus review, but subject to all the well-

established limitations applicable to such review.

B. Did Karen and the Agency Waive Their Challenges to the Sufficiency of Service of Process in this Case?

Having established that Karen's and the Agency's challenges are subject to mandamus review under the specific circumstances of this case, we will now address whether they have waived their challenges. Rule 4(a)(1), Ala. R. Civ. P., states: "Upon the filing of the complaint, or other document required to be served in the manner of an original complaint, the clerk shall forthwith issue the required summons or other process for service upon each defendant." As stated previously, "'[f]ailure of proper service under Rule 4 deprives a court of jurisdiction and renders its judgment void.'" Ex parte Bashinsky, 319 So. 3d at 1255 (quoting Ex parte Pate, 673 So. 2d at 428-29).

Generally, a defendant waives a challenge to the sufficiency of service unless he or she files a Rule 12, Ala. R. Civ. P., motion or a responsive pleading, or an amendment thereof, raising the challenge. See Rule 12(h)(1) ("A defense of ... insufficiency of service of process is waived ... if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof ...."). However, a defendant can also waive the issue of improper service by participating in the

litigation without first raising an objection to service of process. See, e.g., M.W. v. Calhoun Cnty. Dep't of Hum. Res., 369 So. 3d 164, 166 (Ala. Civ. App. 2022); Ex parte Dunbar, 281 So. 3d 444, 446-47 (Ala. Civ. App. 2019); and D.D. v. Calhoun Cnty. Dep't of Hum. Res., 81 So. 3d 377, 380-81 (Ala. Civ. App. 2011).

The materials before us indicate that, in each of their first filings in this case, Karen and the Agency entered a "limited appearance" for the purpose of moving to quash service of process and to dismiss Larry's action against them due to "insufficiency of service of process." Both Karen and the Agency also made clear in their motions that they "specifically preserve[ed] and [did] not waive" that or any other defenses available to them under Rule 12(b).

However, according to Larry, after filing their respective motions, Karen and the Agency began actively participating in the litigation (1) by participating in a deposition and (2) by submitting responses to Larry's requests for admission. As a result, Larry contends that they waived their challenges to the sufficiency of service of process.

The Committee Comments on 1973 Adoption of Rule 12, Ala. R. Civ. P., state, in relevant part: "Neither the filing of a general appearance, nor

the taking of a position looking to the merits, prevents a party from attacking the jurisdiction of the court or the service of process." Additionally, our appellate courts have stated that a timely challenge to the sufficiency of service of process is not waived by later participation in ongoing court proceedings. See M.W., 369 So. 3d at 166 (holding that, because the defendant did not file an answer or a motion that omitted her challenge to service of process and because her counsel, once he was appointed, immediately raised the issue of improper service via an oral motion before the defendant testified or otherwise participated in the trial, her challenge to improper service was not waived); and Ex parte Slocumb Law Firm, LLC, 304 So. 3d 748, 753 (Ala. Civ. App. 2020) (quoting the Committee Comments on 1973 Adoption of Rule 12 and pointing out that a timely objection "attacking the propriety of service of process" is not waived by later participation in the ongoing court proceedings).

This position is consistent with that of other jurisdictions on this issue. See, e.g., Ustanik v. Nortex Found. Designs, Inc., 320 S.W.3d 409, 414 (Tex. App. 2010) (recognizing that participating in the litigation by conducting discovery does not manifest a defendant's intent to waive a

right to seek dismissal); and <u>Joyner v. Schiess</u>, 236 Ga. App. 316, 317-18, 512 S.E.2d 62, 63-64 (1999) (holding that participation in discovery after the defense of insufficiency of service has been properly raised in an answer to a complaint does not constitute waiver of the defense). <u>See also</u> <u>Clark v. City of Zebulon</u>, 156 F.R.D. 684, 694 (N.D. Ga. 1993) (finding that, although defendant had participated in discovery and had filed a counterclaim after asserting an insufficiency-of-service defense, those "actions … constitute responsible representation by counsel who keeps its options open and who is proceeding in the interest of both his client and justice").

In addressing Larry's contentions, Karen and the Agency first note that Karen participated in one deposition after they filed their respective motions to quash. They further note that the responses that they submitted to Larry's requests for admissions were never filed with the trial court but were, instead, provided to Larry's attorney to prevent the filing of a motion to have the matters deemed admitted while their motions to quash were pending. All of these actions occurred after Karen and the Agency clearly challenged the sufficiency of process in their motions to quash service and to dismiss the claims against them. Under

these circumstances, it seems clear to this Court that Karen and the Agency did not waive their challenges to the sufficiency of service of process in this case.

C. Were Karen and the Agency Sufficiently Served with Process?

Finally, as to whether Karen and the Agency were sufficiently served with process, we first note that Karen and the Agency do not dispute that they were the defendants Larry intended to sue. However, they nevertheless argue that dismissal of Larry's action against them is required because Larry failed to comply with the service requirements in Rule 4, Ala. R. Civ. P. As discussed in more detail below, Larry does very little to dispute these assertions.

This Court has previously stated:

> "'One of the requisites of personal jurisdiction over a defendant is "perfected service of process giving notice to the defendant of the suit being brought." Ex parte Volkswagenwerk Aktiengesellschaft, 443 So. 2d 880, 884 (Ala. 1983). "When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally." Id.'"

Bank of Am. Corp. v. Edwards, 881 So. 2d 403, 405 (Ala. 2003) (quoting Horizons 2000, Inc. v. Smith, 620 So. 2d 606, 607 (Ala. 1993)). Because Rule 4 sets forth slightly different standards for service of process on a

corporation and on an individual, we will address each one in turn.

### 1. Service on the Agency

Knight attempted service on the Agency by requesting that the clerk issue service of process by certified mail. Rule 4(i)(2)(B)(i) authorizes a plaintiff to effectuate service by certified mail as follows:

> "(i) In the event of service by certified mail by the clerk, the clerk shall place a copy of the process and complaint or other document to be served in an envelope and shall address the envelope to the person to be served with instructions to forward. In the case of an entity within the scope of one of the subdivisions of Rule 4(c), the addressee shall be a person described in the appropriate subdivision. ..."

(Emphasis added.)

Generally speaking, service of process on a limited-liability company like the Agency is carried out in the same manner as prescribed for both corporations and partnerships. Rule 4(c)(6) provides a general rule that process directed to "a domestic or foreign corporation or upon a partnership, limited partnership, limited liability partnership, limited liability company, or unincorporated organization or association" shall be served on "an officer, a partner (other than a limited partner), a managing or general agent, or any agent authorized by appointment or by law to receive service of process."

27

It is undisputed that the Agency is a limited-liability company and that Larry requested that service be made on the Agency via certified mail. However, the Agency was officially dissolved in 2014 -- years before Larry filed his original complaint in this lawsuit and then amended his complaint to add Karen and the Agency as defendants.

This Court, however, has not specifically addressed the issue of how to serve a dissolved limited-liability company. In <u>Railway Fuel Co. v. Ackerman</u>, 269 Ala. 460, 462, 114 So. 2d 142, 144 (1959), this Court held that, in a lawsuit against a dissolved business entity, "service should be had on the individuals upon whom the applicable statutes have placed the responsibility of attending to the affairs of the dissolved corporation during the period of time in which it remains in existence for limited purposes." Former § 10A-5-7.04(b)(3), Ala. Code 1975, which was in effect at the time the Agency was dissolved, expressly provided that dissolution of a limited-liability company does not "[t]erminate the authority of the registered agent of the limited liability company."[7]  According to the materials before us, the registered agent for the Agency was Karen.

---

[7]The current version of that provision is § 10A-5A-7.02(c)(4), Ala. Code 1975.

Additionally, the articles of dissolution filed by the Agency listed Karen and her ex-husband, Paul, as members of the Agency. The service directed to the Agency, however, was received by Danny Brooks, who was neither the listed registered agent nor named in the articles of dissolution.

Larry does not dispute any of this in his answer and response brief to this Court. He also does not direct this Court to any evidence, or make any argument, to the contrary.

Because service on the Agency was ineffective under the legal principles discussed above, we hold that the Agency has demonstrated a clear legal right to the relief it is seeking here.

### 2. Service on Karen

Rule 4(c)(1) governs service of process on an individual and provides as follows:

> "(c) <u>Upon Whom Process Served</u>. Service of process, except service by publication as provided in Rule 4.3, shall be made as follows:
>
>> "(1) <u>Individual</u>. Upon an individual, other than a minor or an incompetent person, by serving the individual <u>or by leaving a copy of the summons and the complaint at the individual's dwelling house or usual place of abode</u> with some person of suitable age and discretion then residing therein

> or by delivering a copy of the summons and the
> complaint to an agent authorized by appointment
> or by law to receive service of process."

(Emphasis added.)

According to Karen, at the time service was purportedly effectuated on her, she was not residing at the address contained on the "return on service" form; rather, her ex-husband, Paul, resided there. Karen insists that Paul did not have the authority or permission to accept service on her behalf.

Indeed, although the materials before us contain a copy of the summons that shows that a person named "Karen Bradford" was purportedly served at 348 Old Highway 5 in Thomasville on September 10, 2021, there are no materials before us indicating that the residence at that location was Karen's "dwelling house or usual place of abode." In fact, the materials before us show the opposite to be true.

Although Karen admitted in her affidavit that she used to live at that residence with her ex-husband, Paul, she maintained that she was not living there at the time service on her was purportedly made. In his affidavit, which was also included as an attachment to Karen's motion, Paul confirmed that Karen "did not, and does not, reside at my residence

30

and was not present at my residence on September 10, 2021." Additionally, there is nothing in the materials before us that indicates that Paul was "an agent authorized by appointment or by law to receive service of process" on Karen's behalf.

Larry does little to refute this evidence. Instead, he simply alleges that service on Karen was proper because, during her deposition, Karen admitted to having knowledge of Larry's lawsuit. He makes no other assertions that she was properly served either in person or at her "dwelling house or usual place of abode." Because service was ineffective as to the Karen, she has demonstrated a clear legal right to the relief she is seeking here.

Conclusion

Based on the foregoing, we conclude that the petitioners have demonstrated a clear legal right to the relief requested. Accordingly, we grant their petition and issue the writ. We direct the trial court to enter an order striking Larry's sixth amended complaint as well as an order granting Karen and the Agency's motions to quash service of process and to dismiss them from the lawsuit.

PETITION GRANTED; WRIT ISSUED.

31

Shaw, J., concurs.

Mitchell, J., concurs in part and dissents in part, with opinion, which Parker, C.J., and Stewart, J., join.

Wise, J., concurs in the result.

Bryan, J., concurs in the result, with opinion, which Sellers, J., joins.

Mendheim, J., concurs in the result in part and dissents in part, with opinion.

MITCHELL, Justice (concurring in part and dissenting in part).

I concur in Part I of the "Discussion" section of the main opinion, but I dissent from Part II because the parties have not asked us to overrule our longstanding precedent that review by appeal is an adequate remedy for the denial of a motion to quash service. And in my view, Karen Bradford and Bradford Agency, LLC ("the Agency"), have not identified any "matters of substantial importance," Ex parte Volkswagenwerk Aktiengesellschaft, 443 So. 2d 880, 882 (Ala. 1983), that would justify departing from that precedent. For those reasons, I would deny the petition to the extent it seeks a writ directing the trial court to quash service of the complaint.

As the petitioners, Bradford and the Agency "bear[] the burden of establishing" that they have no other adequate remedy. Ex parte Hankook Tire Am. Corp., [Ms. SC-2023-0210, Dec. 22, 2023] ___ So. 3d ___, ___ (Ala. 2023). They can satisfy that burden either by citing "caselaw establishing that [their] petition falls within one of the recognized exceptions to the general rule prohibiting interlocutory appellate review" or by "explain[ing] why [their] case is extraordinary and merits a new exception to that general rule." Ex parte State Farm

Fire & Cas. Co., 320 So. 3d 550, 553 (Ala. 2020). But our Court has repeatedly held that cases involving the denial of a motion to quash service are a category of cases that do <u>not</u> satisfy our mandamus test because an appeal provides an adequate remedy. <u>See, e.g.</u>, <u>Ex parte Maxwell</u>, 812 So. 2d 333, 335-36 (Ala. 2001); <u>Orkin Exterminating Co. of N. Ala. v. Krawcheck</u>, 271 Ala. 305, 12 So. 2d 149 (1960); <u>Ex parte Helveston</u>, 267 Ala. 94, 100 So. 2d 7 (1957). And Bradford and the Agency have not adequately "explain[ed] why [their] case is extraordinary." <u>State Farm</u>, 320 So. 3d at 553.

The main opinion acknowledges our caselaw but reasons that we should grant the mandamus petition here because improper service under Rule 4, Ala. R. Civ. P., "'deprives a court of jurisdiction,'" and a lack of jurisdiction "can be subject to mandamus review." ___ So. 3d at ___ (citation and emphasis omitted). But on that reasoning, mandamus review of a denial of a motion to quash service would <u>always</u> be available because failure of proper service under Rule 4 <u>always</u> implicates personal jurisdiction. <u>Ex parte Pate</u>, 673 So. 2d 427 (Ala. 1995). And that flies in the face of our precedents -- <u>Maxwell</u>, <u>Krawcheck</u>, and <u>Helveston</u> -- holding just the opposite.

34

The main opinion also leans heavily on <u>Volkswagenwerk</u>, the lone case in which we have granted mandamus review of a denial of a motion to quash service, because it raised "matters of substantial importance." 443 So. 2d at 882. The main opinion concludes that Bradford and the Agency's petition fits within the <u>Volkswagenwerk</u> exception because forcing them to fully litigate this case if service was improper would be a "derogation of due process" and a "waste of judicial resources." ___ So. 3d at ___ .

But the "matters of substantial importance" exception in <u>Volkswagenwerk</u> is not so broad. In <u>Volkswagenwerk</u>, this Court was concerned that if service of process on Volkswagenwerk Aktiengesellschaft -- a foreign corporation -- was improper, then, by adjudicating the dispute, the trial court would be "in disregard of the provisions of the Hague Convention and therefore in violation of the Supremacy Clause" of the federal Constitution. 443 So. 2d at 882 (footnote omitted). The Court reiterated that, in most circumstances, "the writ of mandamus is not the proper vehicle for the review of a denial of a motion to quash service, since the dispute over proper service can be settled on appeal." <u>Id.</u> at 881. But the Court concluded that an appeal

was not an adequate remedy in <u>Volkswagenwerk</u> because "to continue to final judgment could be in derogation of a treaty of the United States," and <u>that</u> was a "matter[] of substantial importance." <u>Id.</u> at 882.

Those concerns are orders of magnitude greater than any present here, such as a potential "waste of judicial resources," ___ So. 3d at ___, which, like jurisdiction, is always a concern if service is never perfected. Consequently, to apply <u>Volkswagenwerk</u> here would permit what has always been a narrow exception to swallow the rule.

In reaching the opposite conclusion, the main opinion reasons that "the only other method of attack" for Bradford and the Agency is an appeal from a final judgment, ___ So. 3d at ___, but the main opinion fails to explain why that is inadequate. Ordinarily, we do not grant mandamus relief "merely to alleviate the inconvenience and expense of litigation," <u>Ex parte Sanderson</u>, 263 So. 3d 681, 688 (Ala. 2018); rather, we grant such relief only "where other relief is unavailable or inadequate." <u>Maxwell</u>, 812 So. 2d at 335. And, to my knowledge, we have declined to extend <u>Volkswagenwerk</u> to any other cases and instead have reaffirmed its narrow scope. <u>See, e.g.</u>, <u>Maxwell</u>, 812 So. 2d 335-36. Moreover, Bradford and the Agency have not explained why their case

36

"merits a new exception to th[e] general rule" that mandamus review is improper for a denial of a motion to quash service. State Farm, 320 So. 3d at 553.

Because there is longstanding precedent from our Court that review by appeal is an adequate remedy for the denial of a motion to quash service, and because none of the parties have asked us to overrule those cases, see Ex parte McKinney, 87 So. 3d 502, 509 n.7 (Ala. 2011) (noting that "this Court has long recognized a disinclination to overrule existing caselaw in the absence of either a specific request to do so or an adequate argument asking that we do so"), I respectfully dissent from Part II of the "Discussion" section of the main opinion.

Parker, C.J., and Stewart, J., concur.

BRYAN, Justice (concurring in the result).

I concur in the result to grant this petition for a writ of mandamus regarding the issues discussed in the main opinion. I write specially to briefly address this Court's precedent regarding its review of interlocutory orders denying motions to quash service.

> "'In Ex parte Helveston, 267 Ala. 94, 100 So. 2d 7 (1957), this court stated that the writ of mandamus is not the proper vehicle for the review of a denial of a motion to quash service, since the dispute over proper service can be settled on appeal. Again, in Orkin Exterminating Co. of North Ala. v. Krawcheck, 271 Ala. 305, 312, 123 So. 2d 149, 156 (1960), it was stated on rehearing that "[w]e do not review the action of the trial court in refusing to quash the summons in such a case by extraordinary writs. The error, if any, must be raised on appeal from the final judgment." However, we have allowed review by extraordinary writ, even in the face of a clear prohibition of its usage, where the issue or issues presented also raised matters of substantial importance.'"

Ex parte Maxwell, 812 So. 2d 333, 335-36 (Ala. 2001)(quoting Ex parte Volkswagenwerk Aktiengesellschaft, 443 So. 2d 880, 881-82 (Ala. 1983)).

As noted in the quotation set out above, the general rule that a petition for the writ of mandamus is not the proper vehicle by which to review a denial of a motion to quash service can be traced to this Court's decision in Ex parte Helveston, 267 Ala. 94, 100 So. 2d 7 (1957). After considering the rationale of Ex parte Helveston and the development of

this Court's mandamus jurisprudence in the subsequent decades, I conclude that the general rule categorically declining mandamus review of a denial of a motion to quash service is no longer consistent with the principles underlying this Court's operative precedent.

Before Ex parte Helveston, authority existed "to the effect that the Court will and should review a ruling on such a motion [via a mandamus petition] because there is no remedy to do so by appeal." 267 Ala. at 95-96, 100 So. 2d at 8. In Ex parte Helveston, however, the Court noted that a pair of statutes had been enacted as part of the Alabama Code of 1940 that then effectively permitted review of a trial court's ruling regarding a motion to quash service on appeal from a final judgment. The substantive statute cited by the Ex parte Helveston Court was a predecessor statute to § 6-8-101, Ala. Code 1975. Section 6-8-101 provides:

> "A party may raise the defenses of (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process and, losing thereon, proceed to litigate on the merits; and, losing on the merits, the party may appeal and, on appeal, attack the judgment both on the merits and on such grounds (1) through (5) as he urged below."

39

In other words, § 6-8-101 specifically provides that the defenses enumerated therein can be raised on appeal from a final judgment. However, as the main opinion notes, under this Court's operative precedent, the fact that a defense can be raised on appeal from a final judgment does not necessarily mean that it cannot also be raised in a mandamus petition challenging an interlocutory order.

In Ex parte U.S. Bank National Ass'n, 148 So. 3d 1060, 1064-65 (Ala. 2014), this Court stated, in pertinent part:

> "This Court has held that a writ of mandamus is an appropriate means by which to review the following: subject-matter jurisdiction, Ex parte Johnson, 715 So. 2d 783 (Ala. 1998); standing as a component of subject-matter jurisdiction, Ex parte HealthSouth Corp., 974 So. 2d 288 (Ala. 2007); nonjusticiability as a component of subject-matter jurisdiction, Ex parte Valloze, 142 So. 3d 504 (Ala. 2013); personal jurisdiction, Ex parte Duck Boo Int'l Co., 985 So. 2d 900 (Ala. 2007); … a denial of a motion for a change of venue when venue has been challenged as improper, Ex parte Daniels, 941 So. 2d 251 (Ala. 2006) ….
>
> "Although this list may seem to contradict the nature of mandamus as an extraordinary writ, we note that the use of mandamus review has essentially been limited to well recognized situations where there is a clear legal right in the petitioner to the order sought; an imperative duty upon the respondent to perform, accompanied by a refusal to do so; the lack of another adequate remedy; and properly invoked jurisdiction of the court. Those well recognized situations include making sure that an action is brought in the correct court (e.g., subject-matter jurisdiction and venue) and by the

correct parties (e.g., personal jurisdiction and immunity), reviewing limited discovery rulings (e.g., patently irrelevant discovery), and reviewing erroneous decisions by a trial court where there is a compelling reason not to wait for an appeal (e.g., abatement)."

Therefore, this Court has clearly held that it will review orders addressing all the defenses enumerated in § 6-8-101 by way of a mandamus petition, except, under the categorical prohibition set forth in Ex parte Helveston, those pertaining to the insufficiency of process or the insufficiency of service of process. However, as the main opinion further notes, this Court has also clearly explained the fundamental nature of process.

> "Failure of proper service under Rule 4[, Ala. R. Civ. P.,] deprives a court of jurisdiction and renders its judgment void. Shaddix v. Shaddix, 603 So. 2d 1096 (Ala. Civ. App. 1992). If a court lacks jurisdiction of a particular person, or if it denied that person due process, then the court's judgment is void. Smith v. Clark, 468 So. 2d 138 (Ala. 1985). A void judgment must be set aside. Smith, supra. Furthermore, strict compliance with the rules regarding service of process is required."

Ex parte Pate, 673 So. 2d 427, 428-29 (Ala. 1995).

In light of the foregoing, I see no compelling reason for this Court to continue treating the denials of motions to quash service differently from rulings on the other types of defenses listed in § 6-8-101. Thus, I

41

would not categorically foreclose mandamus review of such rulings. Because I would discontinue the categorical prohibition on mandamus review imposed by Ex parte Helveston, I see no reason to consider the exception to that general rule contemplated by Ex parte Volkswagenwerk Aktiengesellschaft, 443 So. 2d at 882 ("[W]e have allowed review by extraordinary writ, even in the face of a clear prohibition of its usage, where the issue or issues presented also raised matters of substantial importance.").

Notably, in the most recent published opinion of this Court disposing of a mandamus petition that has cited Ex parte Volkswagenwerk Aktiengesellschaft, this Court granted mandamus relief without even considering whether the "substantial[-]importance" exception mentioned in that case was satisfied. In Ex parte Trust Co. of Virginia, 96 So. 3d 67 (Ala. 2012), this Court issued the writ of mandamus and directed that a probate court vacate its orders requiring and enjoining certain actions by a trust company that was serving as a conservator because there was no evidence indicating that the conservatorship had been served or provided with proper notice of the proceeding. The Court stated:

42

"It is axiomatic that a court does not obtain personal jurisdiction over a party upon which service of process has not been perfected and proper notice has not been provided. Because there is no evidence before this Court that the conservatorship ever received service of process or proper notice, the probate court does not have personal jurisdiction over the conservatorship, and its orders directed to the conservatorship are void and due to be vacated."

Id. at 70.

Thus, rather than invoke the categorical prohibition of Ex parte Helveston or the exception to that rule provided by Ex parte Volkswagenwerk Aktiengesellschaft, I would determine whether mandamus relief is appropriate in a particular case involving allegedly inadequate service by considering the long-standing principles for awarding such relief that are articulated in Ex parte U.S. Bank National Ass'n. Specifically, I would consider whether there is a clear legal right in the petitioner to the order sought; an imperative duty upon the respondent to perform, accompanied by a refusal to do so; the lack of another adequate remedy; and properly invoked jurisdiction of the court. Because I believe that those elements are satisfied concerning both issues discussed in the main opinion, I agree with issuing the writ of mandamus in this case.

Sellers, J., concurs.

43

MENDHEIM, Justice (concurring in the result in part and dissenting in part).

I concur in the result as to Part I of the "Discussion" section of the main opinion; I dissent as to Part II for the reasons set forth in Justice Mitchell's special writing.