LYONS, Justice.
Clarke Yarbrough, the defendant in an action pending in the Lee Circuit Court, petitions for a writ of mandamus directing Judge Jacob A. Walker III to set aside his order of March 23, 2000, denying Yar-brough’s motion for leave to file an amendment to a counterclaim and a third-party claim. We grant the petition.
In deciding the issue presented by this petition, we must balance the trial court’s obligation to assure expeditious management of the cases on its docket against our liberal policy of allowing amendments that do not unduly delay the trial. We are here presented with a record that reflects substantial difficulty in scheduling discovery, difficulty leading to numerous accommodations between counsel and creating the circumstance in which depositions were not taken until after the case had been continued several times and was within approximately one month of the trial date.
In early March 1998, Halstead Contractors, Inc. (“Halstead”), acting through Foy Tatum, negotiated with Yarbrough in an effort to obtain a lease of certain real property located in Lee County and owned by Yarbrough. During this time, Yar-brough understood that Halstead was acting on behalf of CVS Corporation, doing business as CVS Pharmacy. Yarbrough also was involved in negotiations over the same property with an oil company and with Rite Aid Pharmacy. Yarbrough, on March 20, 1998, signed a “letter of intent” to lease the property to Rite Aid. Upon learning of this action by Yarbrough, Hal-stead sued Yarbrough in the Lee Circuit Court, on June 11, 1998. In its complaint, Halstead alleged that on March 4, 1998, Yarbrough had contracted to lease the property to Halstead for $7,000 per month; that, despite Halstead’s willingness to perform the contract, Yarbrough had breached it; and that Halstead was entitled to specific performance of the contract and to damages. Rite Aid apparently lost interest in the property in mid-July 1998.
Yarbrough, on August 11, 1998, moved to dismiss the action. Counsel for the parties met on August 31, 1998, to discuss settlement of the pending action. On that date, a settlement document was executed by Tatum on behalf of Halstead and by attorney Charles J. Lorant on behalf of Yarbrough. On September 17, 1998, Hal-stead filed a notice of voluntary dismissal of its action against Yarbrough, even *130 though Yarbrough had previously moved to dismiss the action. Notwithstanding Halstead’s notice of dismissal, four days later, on September 21, 1998, the trial court entered an order setting the case for trial.[2]
The parties thereafter engaged in numerous activities, including the filing by Yarbrough of an answer and a counterclaim in December 1998 against Halstead based upon the alleged lease agreement of March 4, 1998, and the settlement agreement of August 31,1998. On February 23, 1999, Yarbrough filed what he styled as an “amended counterclaim” to join CVS as a “Third Party Defendant.” We treat this pleading as a third-party complaint against CVS. Yarbrough alleged that at all material times Halstead was acting on behalf of CVS, with full authority to act on its behalf, and he demanded specific performance by Halstead and CVS of the agreement to lease the property. Yarbrough, on September 20, 1999, moved for a summary judgment in his favor on the claims for relief stated in Halstead’s complaint; the trial court granted Yarbrough’s motion on October 26, 1999, without opposition from Halstead. During this time frame, the case was set seven times for trial, beginning with the order of September 21, 1998, setting the case for trial on January 13, 1999; thereafter, it was continued to March 23, 1999; thereafter, to May 10, 1999; thereafter, to August 10, 1999; thereafter, to November 2, 1999;[3] thereafter, to January 5, 2000; and, thereafter, to April 26, 2000. These continuances were apparently obtained by consent of all parties.
A review of the parties’ efforts to take depositions will shed light upon the reasons for this delay. Yarbrough first served a notice of deposition of Halstead’s representative; this was shortly before the first order setting the case for trial. Yar-brough claims that he served 15 notices to depose Tatum and CVS representatives, beginning in September 1998. Over the ensuing months, Yarbrough accommodated the opposing parties’ various requests for postponement, requests based upon problems such as scheduling conflicts and substitution of counsel. Likewise, Halstead and CVS accommodated Yarbrough’s counsel.
To illustrate, Yarbrough agreed on two occasions during March and April 1999 to continue his previously noticed depositions of Tatum; of a Rule 30(b)(6), Ala.R.Civ.P., representative of CVS; and of Gary Greve, a CVS employee. Yarbrough’s notice of depositions directed to Tatum and Greve for October 12, 1999, resulted in his agreement, apparently at the request of opposing counsel, to postpone these depositions until October 19, 1999. Then, an attorney *131 for Yarbrough advised the other parties that he had two trials set for the week of October 18, 1999, and that those trials would conflict with the depositions as rescheduled. Yarbrough’s attempt to schedule depositions for December 8, 1999, proved inconvenient for one of the witnesses, a CVS employee. When Yar-brough indicated his intent to take the deposition of an attorney acting on behalf of Halstead during the settlement discussion meeting of August 31, 1998, a potential conflict arose; that potential conflict led to the appearance of substitute counsel for Halstead and caused another postponement of the trial, which was then set for January 2000, and it presumably aborted further efforts to take discovery depositions in December 1999.
Yarbrough’s “Fifth Amended Notice of Taking Depositions and Requests for Production of Documents” met with additional requests for relief from opposing counsel based upon scheduling conflicts. At this point, Yarbrough’s counsel stated the following in correspondence to opposing counsel:
“It took my office more than three weeks of working with the attorneys in this case to get this date [March 7, 2000]. The case is set for trial the first week in April,[4] and Judge Walker has repeatedly admonished us that the case will not be continued again. Regretfully, I cannot agree that the depositions will be rescheduled after the March 7, 2000 date.”
The depositions were finally taken on March 7, 2000. According to Yarbrough, he learned from these depositions additional material facts. According to Yar-brough, he learned that CVS had allowed Halstead, through Tatum, to convey the false impression that Halstead had authority to bind CVS, as a means of preventing Yarbrough from going forward with a lease with Rite Aid. Tatum testified in deposition that Halstead knew it had no authority to acquire property for CVS. Tatum also testified that the only reason Halstead filed the lawsuit was to break up the deal between Rite Aid and Yarbrough, that this ploy was discussed with CVS, and that Yarbrough’s counsel had been so advised. According to Yarbrough, Tatum’s deposition revealed that Tatum was actually looking for other property at the time settlement negotiations between Yar-brough and Halstead were going on and during the settlement meeting and that CVS’s acquiring that other property would have precluded its using Yarbrough’s property; that CVS was moving forward on other sites; that CVS and other entities were searching for sites that would have precluded the selection of the Yarbrough site; and that such activities were going on while Halstead was negotiating the settlement that resulted in the August 31, 1998, document upon which Yarbrough’s first counterclaim was based.
Yarbrough maintains that Tatum’s testimony as to Halstead’s lack of authority conflicted with representations upon which Yarbrough had relied, going back to a letter dated January 16, 1998, from CVS addressed “TO WHOM IT MAY CONCERN” and stating:
“This letter is to verify that Halstead Contractors/Developers, Inc. is duly authorized by CVS Corporation to acquire properties for development of CVS/pharmacy stores throughout the State of Alabama.”
*132 Tatum testified that this letter was prepared especially for Yarbrough and was given to him at his request and to assure Yarbrough that he had CVS as a tenant.
CVS points out that in its answer filed several months earlier it had denied Hal-stead was acting as its agent. CVS and Halstead also point to testimony from Yar-brough to the effect that Yarbrough knew that CVS had to approve any provisions, agreements, or deals that Halstead negotiated.
A writ of mandamus is an extraordinary remedy, and it will be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue to compel the exercise of a trial court’s discretion, but it will not issue to control or to review a court’s exercise of its discretion unless an abuse of discretion is shown. Ex parte Auto-Owners Ins. Co., 548 So.2d 1029 (Ala.1989). If the remedy by way of appeal is adequate, as is usually the case with rulings allowing or disallowing amendments, we will decline to grant the writ; in those cases in which an appeal does not provide an adequate remedy, we will issue the writ. Ex parte Miller, 292 Ala. 554, 297 So.2d 802, 805 (1974). See, also, Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So.2d 645 (1975).
Yarbrough reminds us that a trial court should freely allow the amendment of pleadings where justice so requires. Rule 15(b), Ala.R.Civ.P.; Watkins v. Central Contracting, Inc., 603 So.2d 899 (Ala.1992). Halstead and CVS rely upon Ex parte Stead, 294 Ala. 3, 310 So.2d 469, 471 (1975), and Stallings v. Angelica Uniform Co., 388 So.2d 942 (Ala.1980), upholding the trial court’s exercise of discretion in denying leave to amend under circumstances where the party seeking to amend knew or should have known, well in advance of the attempted amendment, the facts giving rise to the new claims.
Perhaps by carefully parsing the pleadings and answers given by Yarbrough at his deposition one could make a case for the proposition that some of the information was available to Yarbrough before the March 7, 2000, depositions were taken. However, we are not satisfied from the materials before us that such can be said with respect to all of the things Yarbrough argues were new evidence not available to him until he took those depositions.[5] Even conceding that Halstead and CVS can show that some of the evidence germane to the amended counterclaim and the amended third-party claim is based upon facts that Yarbrough knew or should have known without the depositions, their repeated actions in seeking accommodation from Yarbrough on the numerous occasions on which depositions were noticed,[6] when combined with the undisputed existence of facts, which we deem to be sub *133 stantial and significant, that were not known before the depositions of March 7, 2000, were taken, estop them from relying on the rule applied in Stead and Stallings. Moreover, this case is unlike Stead, in that here we do not have a long history of delays and continuances attributable solely to the party tendering the amendment. See Stead, 294 Ala. at 6, 310 So.2d at 471. Some of the numerous continuances of the trial in this present case were grounded upon Yarbrough’s inability to conduct discovery because of the accommodations between the parties, while, on other occasions, they were attributable to Halstead’s substitution of counsel and to legitimate scheduling conflicts and illness of Yar-brough’s counsel.[7]
We are mindful of the problems facing a trial court in maintaining its obligation to administer the expeditious flow of cases on its docket. We recognize that the public has an interest in the efficient disposition of cases, an interest that transcends any interest counsel have in their own convenience. However, we are reluctant to defer to that worthy goal on a record such as we have before us here, a record indicating that significant aspects of the materials made the basis of Yar-brough’s amended counterclaim and amended third-party claim were not available to him largely because of his willingness to cooperate with opposing counsel. We should not be understood to hold or suggest that parties can indefinitely postpone depositions and thereafter, through amendments, defeat the trial court’s efforts to dispose of cases it has set for trial. However, on the record before us, suggesting that the party seeking to defeat the amendment has been a significant beneficiary of opposing counsel’s accommodating spirit, we must intervene, though we do so reluctantly, in a matter that ordinarily rests within the sound discretion of the trial court. We must conclude that the trial court abused its discretion in denying Yarbrough’s motion for leave to amend his counterclaim against Halstead and third-party complaint against CVS.
We consider it inappropriate to defer our consideration of this issue until we have it before us on appeal; it is inappropriate because of the likelihood that Yar-brough would succeed on appeal and because of the potential[8] that on appeal we would order a new trial. Therefore, we grant Yarbrough’s petition for a writ of mandamus. We direct the trial court to set aside its order of March 23, 2000, denying Yarbrough’s motion for leave to amend his counterclaim against Halstead and third-party complaint against CVS in this nonjury case.
*134 PETITION GRANTED; WRIT ISSUED.
HOOPER, C.J., and MADDOX, COOK, and BROWN, JJ., concur.
JOHNSTONE, J., recuses himself.

. Because Yarbrough had served neither an answer nor a motion for summaiy judgment at the time Halstead filed the notice of dismissal, the case arguably was thereafter no longer pending in the Lee Circuit Court. See Rule 41(a)(1) (”[A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.”). Service of a motion to dismiss the action, prior to the notice, ordinarily would not defeat Halstead’s right to dismiss simply upon giving notice. Pennsylvania R.R. v. Daoust Constr. Co., 193 F.2d 659 (7th Cir.1952). However, because Yar-brough’s motion to dismiss raised matters that could not have been resolved without converting the motion into a motion for sum-maiy judgment, we treat it as a motion for summary judgment, as the trial court and all the parties apparently did. Hence, the notice of dismissal was not effective without an order of the court.

. The order continuing the trial to November 2, 1999, struck a jury demand filed by Yar-brough on June 1, 1999, that Halstead and CVS challenged as untimely.

. The trial was continued to April 26, 2000, because Yarbrough's counsel underwent emergency cataract surgery.

. Halstead and CVS concede this point. Hal-stead's objection and response to Yarbrough’s motion for leave to amend his counterclaim and third-party claim, adopted by CVS, states: "Regardless, a careful reading of the Second Amended Counterclaim reveals that the facts alleged were, for the most part, available to Yarbrough throughout this matter.” (Emphasis added.)

. Halstead's objection and response to Yar-brough's motion for leave to amend his counterclaim and third-party claim, adopted by CVS, called to the trial court's attention the pattern of agreements to reschedule the depositions for various reasons.

. Halstead claims it was prejudiced by an alleged difficulty in locating Greve, a former CVS employee, whose testimony Halstead argues would be material to the amended counterclaim and the amended third-party claim. Greve’s materiality should not be seen as something introduced into the case for the first time in March 2000. Yarbrough first noticed the deposition of Greve for March 16, 1999, and this deposition was continued by agreement.

. Yarbrough raises the interesting question whether the relationship of his counterclaim to facts arising before and after the commencement of the action saves his counterclaim from being compulsory. We do not reach this issue, because it is not necessary to do so in order to resolve the issue of the propriety of the amendment. It is preferable to resolve the parties’ differences in one trial, since those differences relate to matters occurring both before and after the commencement of the action. We thereby obviate the necessity for resolving the issue of preclusion pursuant to Rule 13(a) in a subsequent action which, if allowed to proceed, would perhaps be significantly limited by determinations in the preceding action based on prejudicially narrow evidence.