Rel: December 12, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2024-0767

————————————————

**Ex parte Coosa Valley Medical Center**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Rhiannon Carroll, as the natural parent and next of kin of her minor child, J.C.**

**v.**

**Marble City Family Care and Obstetrics, P.C.; Coosa Valley Medical Center; and Clifton Garris, M.D.)**

**(Talladega Circuit Court: CV-22-900226)**

———————————

**SC-2024-0770**

———————————

**Ex parte Marble City Family Care and Obstetrics, P.C., and Clifton Garris, M.D.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Rhiannon Carroll, as the natural parent and next of kin of her minor child, J.C.**

**v.**

**Marble City Family Care and Obstetrics, P.C.; Coosa Valley Medical Center; and Clifton Garris, M.D.)**

**(Talladega Circuit Court: CV-22-900226)**

COOK, Justice.[1]

In July 2022, Rhiannon Carroll sued Coosa Valley Medical Center ("Coosa Valley"), Marble City Family Care and Obstetrics, P.C. ("Marble City"), and Clifton Garris, M.D. (collectively referred to as "the defendants"), on behalf of her minor child, J.C. She filed one complaint against Coosa Valley and a separate complaint against Marble City and

---

[1]This case was originally assigned to another Justice on this Court. It was reassigned to Justice Cook on August 22, 2025.

Dr. Garris, both in the Talladega Circuit Court. In those complaints, she alleged claims under the Alabama Medical Liability Act of 1987, § 6-5-541 et seq., Ala. Code 1975 ("the AMLA"), for injuries suffered by J.C. during his birth on October 19, 2020.

On July 25, 2022, Carroll filed identical first amended complaints against the defendants in which she sought both compensatory and punitive damages for injuries sustained by <u>both</u> her and J.C. during childbirth. In her amended complaints, Carroll alleged that there were multiple breaches of the applicable standard of care before, during, and after J.C.'s birth, including a failure to discuss all options for delivery with her; the crudeness of the delivery, which, she alleged, resulted in an injury to J.C.'s shoulder; and the failure to perform both an after-birth ultrasound and a fetal-growth examination.

After Carroll amended her complaints, the defendants spent the next two years conducting and responding to written discovery, preparing witnesses, participating in depositions, retaining experts, and constructing their defense strategies for this litigation with the understanding that the allegations in Carroll's amended complaints described "each act and omission" upon which her claims were based.

After the close of fact discovery, Carroll served her expert disclosures on the defendants. Those disclosures indicated that Carroll's experts -- three doctors and one nurse -- would be offering opinions also addressing acts or omissions that were not previously alleged in Carroll's original or first amended complaints. However, Carroll had not amended her complaints to add allegations concerning those new acts or omissions.

As a result, the defendants moved to strike portions of the expert disclosures so as to prevent Carroll's experts from testifying about acts or omissions that were not alleged in her original or first amended complaints. It was only after those motions were filed that Carroll finally amended her complaints to add additional allegations about the new acts or omissions identified by her experts.

The defendants thereafter moved to dismiss the new allegations in Carroll's second amended complaints on the basis that they were not timely asserted. The trial court denied the defendants' motions.

The defendants have now petitioned this Court for writs of mandamus directing the trial court to vacate its orders denying their motions to dismiss the new allegations in Carroll's second amended complaints and to enter orders granting the defendants motions to

4

dismiss. For the reasons explained below, we grant both petitions

Facts and Procedural History

I. Carroll's Prenatal Care

On March 9, 2020, Carroll initiated prenatal maternity care at Marble City's clinic and had her first obstetrician appointment with Dr. Garris. Carroll continued to visit Dr. Garris during her pregnancy, and, at her appointment on July 14, 2020, Dr. Garris diagnosed Carroll with gestational diabetes mellitus and ordered a consultation with a maternal-fetal-medicine specialist. At the time, Carroll was at 23 weeks' gestation.

Carroll attended a prenatal appointment at the University of Alabama-Birmingham Obstetrics Special Care Clinic on July 27, 2020, during which it was recommended that Carroll start taking metformin orally if she did not meet her prenatal-treatment goals. It was also recommended that an ultrasound be conducted at 36-37 weeks' gestation to record an estimated fetal weight.

Following that appointment, Dr. Garris started Carroll on metformin on August 18, 2020. Dr. Garris also ordered a nonstress test, a biophysical-profile ultrasound, and a fetal-growth ultrasound on

September 29, 2020. However, according to Carroll, the fetal-growth ultrasound was never conducted, and "[n]o fetal weight determination or fetal growth parameters were performed or reported."

On October 13, 2020, when Carroll was at 36 weeks' gestation, Dr. Garris diagnosed Carroll with preeclampsia and ordered at-home blood-pressure monitoring. He also gave Carroll Celestone in anticipation of inducing labor at 37 weeks' gestation.

II. Carroll's Induction

On October 19, 2020, Carroll was admitted to Coosa Valley for her planned induction of labor. At that time, Dr. Garris performed "an artificial rupture of membranes and began Pitocin intravenous infusion to stimulate uterine contraction and labor."

Carroll alleges that her medical records indicate that she pushed for approximately two hours and that "Dr. Garris then applied a Kiwi Vacuum device to pull the baby out." J.C.'s right shoulder initially could not be extracted, and, even after Carroll was placed in "the McRoberts' position," the shoulder still could not be extracted. Dr. Garris then "reached in and grabbed the posterior shoulder (left shoulder) and delivered the shoulder with a pop which was felt." The right shoulder

6

was then delivered while Carroll was in the McRoberts' position. Mild hip dystocia was noted after J.C. was delivered.

Carroll also alleged that her "perineum was noted to have a 4th degree midline tear through the posterior vaginal wall into the rectal mucosa and right labial tear." According to Carroll, "[t]his required multiple sutures to repair."

J.C. was born at 5:02 p.m. on October 19, 2020, and weighed 9 pounds and 13 ounces. J.C. had a left midshaft humerus fracture and a right brachial plexus injury. He was transferred to the neonatal-intensive-care unit on October 21, 2020.

### III. Carroll's Underlying Lawsuit Against the Defendants

On July 1, 2022, Carroll filed a complaint against Coosa Valley and a complaint against Marble City and Dr. Garris. Later that month, Carroll filed identical first amended complaints against the defendants in which she sought both compensatory and punitive damages for injuries sustained by both her and J.C. during childbirth. She alleged four counts against the defendants.

In Count One, Carroll alleged that Dr. Garris failed to meet the "national standard of care" in 25 different ways. For instance, Carroll

alleged that, before delivery, Dr. Garris failed to determine J.C.'s fetal weight, which would have required him to consider performing a primary cesarean section and to offer that as an option to Carroll before her induction. Carroll also alleged that, during delivery, Dr. Garris negligently applied the Kiwi vacuum device and failed to perform a cesarean section after Carroll pushed for more than two hours.

In Count Two, Carroll alleged that Dr. Garris failed to meet the applicable standard of care because he did not inform Carroll about all the material risks, benefits, and alternatives to vaginal delivery. More specifically, Carroll alleged that Dr. Garris knew, or should have known, the increased risk of injury to J.C. with vaginal delivery because of Carroll's gestational diabetes, larger than expected fundal height, and short maternal stature and the lack of an estimated fetal weight. Carroll alleged that had Dr. Garris disclosed the material risks of vaginal delivery, both Carroll and a reasonable person in Carroll's position would not have consented to vaginal delivery and would have instead chosen a cesarean section, which, she asserted, likely would have prevented all of J.C.'s injuries.

In Count Three, Carroll alleged that Marble City, from which she

received prenatal care, did not obtain informed consent and breached the applicable standard of care by failing to follow its own established policies and procedures. Specifically, Carroll alleged that the national standard of care requires Marble City to have policies in place to follow up on important tests ordered but not performed by its physicians. Carroll further alleged that Marble City negligently trained and supervised its physicians, nurses, and office personnel on the policies and procedures that were in place regarding patient testing. Carroll also alleged that Marble City breached the applicable standard of care by not conducting the fetal-growth ultrasound and by scheduling Carroll for vaginal delivery without her informed consent before obtaining an estimated fetal weight.

In Count Four, Carroll alleged a medical-negligence claim against Coosa Valley. Carroll alleged that Coosa Valley was required to have policies and procedures in place to prevent avoidable harm and that Coosa Valley's failure to perform the fetal-growth ultrasound ordered by Dr. Garris, and its potential failure to inform Dr. Garris, his staff, or Carroll that the test had not been performed, were breaches of the applicable standard of care. Carroll also alleged that Coosa Valley's

9

nurses breached the applicable standard of care, and that Coosa Valley was liable under the doctrine of respondeat superior, because the nurses failed to properly assess the position of the presenting cephalic part during delivery and because they did not attempt to stop Dr. Garris from applying a vacuum device to assist with the delivery.

The defendants filed their answers in August 2022 and raised various affirmative defenses, including the defenses provided in the AMLA.

The parties then conducted discovery over the next two years. Pursuant to the trial court's scheduling order entered on January 12, 2024, fact discovery was scheduled to close on May 28, 2024, which was extended once by mutual agreement to June 11, 2024.

IV. Carroll's Rule 26, Ala. R. Civ. P, Expert Disclosures

On June 11, 2024, Carroll served her Rule 26 expert disclosures, which identified four expert witnesses: Dr. Brian Woodruff, Dr. Brock McMillen, Dr. Michelle Alba, and Nurse Julie Miller-Morin.

According to those expert disclosures, Dr. Woodruff intended to testify about the extent of J.C.'s injuries, that J.C. may not fully recover through physical or occupational therapy, and that J.C. likely would not

have suffered his injuries had a cesarean section been performed.

Next, the expert disclosures revealed, Dr. McMillen and Dr. Alba intended to testify about various topics related to Dr. Garris's alleged breach of the applicable standard of care, including Dr. Garris's efforts to obtain an estimated fetal weight, his application of a vacuum to assist with delivery, his failure to offer Carroll a primary cesarean section, and his failure to explain the risks and benefits of a primary cesarean section to Carroll.

In addition, the expert disclosures indicated that they intended to testify about acts and omissions not previously set out in Carroll's first amended complaints, including Dr. Garris's allegedly improper administration of Pitocin and his repair of Carroll's perineal tear.

Finally, the expert disclosures revealed that Nurse Miller-Morin intended to testify that Coosa Valley's nurses breached the applicable standard of care for a variety of reasons, including by failing to properly assess the position of the presenting cephalic part during delivery and by failing to attempt to stop Dr. Garris from applying the vacuum during delivery.

In addition, the expert disclosures revealed that she intended to

11

testify about acts and omissions not previously set out in Carroll's first amended complaints, including the nurses' alleged failure to properly recognize and report risk factors associated with shoulder dystocia, to correctly manage and respond to changes in fetal status, to follow physician orders, and to manage the administration of Pitocin.

## V. The Defendants' Motions to Strike and Carroll's Subsequent Second Amended Complaints

More than two weeks later, on June 28, 2024, the defendants filed motions to strike portions of Carroll's expert disclosures, arguing that some of the expert opinions addressed acts or omissions that were not contained in Carroll's first amended complaints, in violation of the discovery privileges provided in § 6-5-551 of the AMLA.

On July 29, 2024, approximately seven weeks after the close of fact discovery and after Carroll had disclosed her experts, Carroll responded by filing second amended complaints. She also filed a response to the defendants' motions to strike.

Carroll's second amended complaints added new claims related to the new acts and omissions alleged in Carroll's Rule 26 expert disclosures, specifically, claims pertaining to (1) the administration of Pitocin, (2) the repair of Carroll's perineal tear, and (3) the additional

12

ways Coosa Valley's nurses allegedly breached the applicable standard of care.

In her response to the defendants' motions to strike, Carroll argued that the defendants' motions were now "moot" because Carroll had now amended her complaints "in a timely manner following the completion of fact discovery" and more than 90 days before trial.

The defendants then filed motions to dismiss the new allegations in Carroll's second amended complaints on August 12, 2024, arguing that those new allegations against the defendants violated the "timely amendment" requirement in § 6-5-551 of the AMLA.

### VI. The Trial Court's Orders on the Defendants' Motions to Strike and Motions to Dismiss

The trial court then held a hearing on the defendants' motions to strike portions of Carroll's expert disclosures and motions to dismiss the new allegations in Carroll's second amended complaints.

Following that hearing, on October 2, 2024, the trial court entered a single order denying Coosa Valley's motion to strike some of the expert opinions and motion to dismiss the new allegations in Carroll's second amended complaint. In support of its decision, the trial court reasoned that Carroll had "filed her Second Amended Complaint within 40 days of

13

the last discovery deposition and close of fact discovery, prior to expert depositions, and nearly a year prior to trial" and that, therefore, the "additional allegations against [Coosa Valley] … were timely under Ala. Code § 6-5-551 and are due to be granted."  The trial court further reasoned that Coosa Valley's motion to strike portions of Carroll's expert disclosures should be denied "because this Court finds the additional allegations against [Coosa Valley] in Plaintiffs' Second Amended Complaint timely."

That same day, the trial court also entered an order denying Marble City and Dr. Garris's motion to strike portions of Carroll's expert disclosures and their motion to dismiss the new allegations in Carroll's second amended complaint. The trial court entered an amended order the following day.  In support of its decision, the trial court reasoned, among other things, that Carroll had "filed her Second Amended Complaint within 40 days of the last discovery deposition and close of fact discovery, prior to expert depositions, and nearly a year prior to trial" and that, therefore, the "additional allegations against Defendant Clifton Garris in Plaintiffs' Second Amended Complaint were timely under Ala. Code § 6-5-551 and are due to be granted."

14

The trial court also concluded that Marble City and Dr. Garris's motion to strike portions of Carroll's expert disclosures should be denied because Carroll had properly amended her complaint to include her new allegations. More specifically, the trial court reasoned that the motion should be denied "because this Court finds the additional allegations against Clifton Garris in Plaintiffs' Second Amended Complaint timely, and that the additional allegations relate back to the original allegations in the complaint," and because § 6-5-551 of the AMLA "provides plaintiffs the right to amend their complaints to reflect newly discovered breaches of the standard of care and to amend their complaint to reflect the course of discovery."

Thereafter, the defendants filed motions to reconsider those orders. After the trial court denied those motions, the defendants filed the present petitions for the writ of mandamus. Our Court ordered answers and briefs.

Standard of Review

Our Court has previously explained that a

"'writ of mandamus is an extraordinary remedy, and it will be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3)

15

the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court."'"

Ex parte Alfa Mut. Ins. Co., 212 So. 3d 915, 918 (Ala. 2016) (quoting Ex parte Yarbrough, 788 So. 2d 128, 132 (Ala. 2000)) (other citation omitted). Furthermore, if the "'remedy by way of appeal is adequate, as is usually the case with rulings allowing or disallowing amendments, we will decline to grant the writ; in those cases in which an appeal does not provide an adequate remedy, we will issue the writ.'" Id. (quoting Ex parte Yarbrough, 788 So. 2d at 132). However, a "'writ of mandamus … will issue to correct a trial court's ruling regarding the amendment of pleadings … when it is shown that the trial court has exceeded its discretion.'" Id. (quoting Ex parte Liberty Nat'l Life Ins. Co., 858 So. 2d 950, 952 (Ala. 2003)).

## Discussion

The defendants argue, among other things, that the new allegations in Carroll's second amended complaints violate the AMLA's "timely amendment" requirement in § 6-5-551. In response, Carroll argues that the new allegations in her second amended complaints were timely under § 6-5-551, relate back to the date the case was originally filed, under Rule 15(c), Ala. R. Civ. P., and therefore do not implicate the discovery

16

privileges provided in § 6-5-551 of the AMLA. For the reasons explained below, we agree with the defendants.

### I. A Plaintiff's Right to Amend a Complaint under Rule 15(a), Ala. R. Civ. P., and § 6-5-551 of the AMLA

Ordinarily, Rule 15(a) governs whether an amendment to a pleading is allowed. That rule provides, in relevant part, that

> "a party <u>may</u> amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires."

Rule 15(a) (emphasis added).

The right to amend provided in Rule 15(a) is not unlimited. At any time not more than 42 days before the first setting of the case for trial, "a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause." <u>Id.</u> In addition, our Court has previously recognized that other reasons, such as undue delay in requesting an amendment, can support the denial of an amended pleading before the case is set for trial. <u>See</u>, <u>e.g.</u>, <u>Puckett, Taul & Underwood, Inc. v. Schrieber Corp.</u>, 551 So. 2d 979, 984 (Ala. 1989) ("We have frequently recognized that undue delay in filing an amendment, when it could have been filed earlier based on the information available

17

or discoverable, is in itself ground for denying an amendment." (citing Stallings v. Angelica Uniform Co., 388 So. 2d 942, 947 (Ala. 1980))); see also Ex parte Liberty Nat'l Life Ins. Co., 858 So. 2d at 953 (noting that "actual prejudice or undue delay" are valid grounds to deny an amendment before the first setting of the case for trial).

However, the present case involves claims that were brought under the AMLA. The AMLA includes pleading requirements for certain actions against a health-care provider for breaching the applicable standard of care. See § 6-5-551 (providing that "the [AMLA] shall govern the parameters of discovery and all aspects of the action" (emphasis added)). Unlike with other actions, the AMLA requires the plaintiff to include in the complaint "a detailed specification and factual description of each act and omission alleged by [the] plaintiff to render the health care provider liable to [the] plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." § 6-5-551 (emphasis added).

Section 6-5-551 also governs amendments to complaints alleging claims under the AMLA. That statute provides, in relevant part: "The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided,

18

however, that any such amendment must be made <u>at least 90 days before trial</u>." (Emphasis added.)

The AMLA's more specific amendment requirements in § 6-5-551 supplement Rule 15(a)'s more general provisions. <u>See</u> § 6-5-552, Ala. Code 1975 ("[The AMLA] applies to all actions against health care providers based on acts or omissions accruing after June 11, 1987, and as to such causes of action, shall <u>supersede</u> any <u>inconsistent</u> provision of law." (emphasis added)). To conclude otherwise would make the text of § 6-5-551 a nullity. <u>See</u>, <u>e.g.</u>, Rule 1(a), Ala. R. Civ. P. ("These rules govern procedure in the circuit courts and in courts of full, like jurisdiction … except as <u>otherwise provided by statute</u> …." (emphasis added)); Ala. Const. 2022, Art. VI, § 150 (providing that the Supreme Court has the power to "make and promulgate rules" but that those "rules may be changed by a general act of statewide application"); <u>Ex parte Kennedy</u>, 656 So. 2d 365, 267-68 (Ala. 1995) (concluding that the AMLA's venue provisions govern instead of the venue provisions in the Alabama Rules of Civil Procedure).

The defendants argue that Carroll's new allegations in her second amended complaints were untimely. More specifically, the defendants

19

argue that Carroll had knowledge of the acts and omissions upon which her new allegations are based at the time the case was originally filed, or, according to Carroll's own statements during discovery, at least more than a year before she filed her second amended complaints. Carroll's delay in amending her complaints, the defendants argue, violates § 6-5-551's requirement that the plaintiff "timely" amend her complaint "upon ascertainment of new or different acts or omissions upon which [her] claim is based." (Emphasis added.) We will address each of the new allegations in Carroll's second amended complaints in turn.

## II. Carroll's New Allegations in her Second Amended Complaints

### A. Carroll's New Allegations Concerning the Administration of Pitocin Were Untimely with Respect to Marble City and Dr. Garris.

Although the first amended complaint contained an itemized list of 25 alleged breaches of the applicable standard of care by Dr. Garris, it did not include an allegation that the administration of Pitocin constituted a breach of the standard of care. The materials before us indicate that Carroll had a copy of her medical records and possessed the information required to assert a claim concerning the administration of Pitocin when she first filed this lawsuit on July 1, 2022. However, she

20

did not amend her complaint to assert such a claim until July 29, 2024, more than two years after the suit was initiated.

It is further evident from the materials before us that, at the very latest, Carroll knew of the facts that formed the basis of her Pitocin claim on March 9, 2023, when her attorney deposed Dr. Garris, or on June 20, 2023, when her attorney deposed Nurse Skinner. Carroll herself states in her answer that Nurse Skinner's deposition revealed "key communications between the care team -- particularly between Nurse Skinner and Dr. Garris -- regarding fetal response to Pitocin titration." Carroll's answer to Marble City and Dr. Garris's petition at 32. Despite this knowledge, it is undisputed that Carroll did not amend her complaint to include a claim related to the administration of Pitocin until 16 months after Dr. Garris's deposition, 13 months after Nurse Skinner's deposition, and after fact discovery had closed.

To justify this delay, Carroll first argues that § 6-5-551 "expressly allows amendments based on newly discovered acts or omissions, provided they are filed at least 90 days before trial." Carroll's answer to Marble City and Dr. Garris's petition at 20. Then, Carroll argues that her second amended complaint was timely because it "follow[ed]

21

extensive discovery and expert review" and was filed more than 90 days before trial. Id.

Carroll misinterprets this statute. While this statute prohibits a plaintiff from amending her complaint within 90 days of trial, it also provides that the plaintiff "shall amend [her] complaint timely upon ascertainment of new or different acts or omissions upon which [her] claim is based." § 6-5-551 (emphasis added).This portion of the statute is mandatory, as evidenced by the Legislature's use of the word "shall." See Ex parte Prudential Ins. Co. of America, 721 So. 2d 1135, 1138 (Ala. 1998) (recognizing that "[t]he word 'shall' is clear and unambiguous and is imperative and mandatory"). The 90-day requirement identified by Carroll is an additional requirement that cannot be used to render the mandatory portion of the statute inoperative or meaningless. See Ex parte D.B., 975 So. 2d 940, 954 (Ala. 2007) ("'"'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ….'"'") (citations omitted)).

Carroll then argues, without citing any caselaw, that her delay was justified because she wanted to collect more evidence so that she could

"present a fully substantiated complaint based on the culmination of fact discovery and expert review, consistent with the intent of § 6-5-551." Carroll's answer to Marble City and Dr. Garris's petition at 33 (noting that, after Nurse Skinner's deposition, Carroll continued to collect evidence from her husband regarding her injuries, to seek evidence from her pediatric-neurology expert, and to take the depositions of her colorectal surgeon and gastroenterologist).

However, Carroll's argument regarding the "intent of § 6-5-551" is mistaken. There is no indication in the text of the statute that a plaintiff can delay filing an amended complaint to allow for the "culmination of fact discovery and expert review" so that the plaintiff can file a "fully substantiated" amended complaint.[2] Instead, the text of § 6-5-551

---

[2]In fact, we note that § 6-5-540, Ala. Code 1975, of the AMLA -- which is titled "Legislative intent" -- does not include any language that would support Carroll's argument here. Rather, it expressly states that "a crisis threatens the delivery of medical services to the people of Alabama" and that "it is the declared intent of this Legislature to insure [sic] that quality medical services continue to be available at reasonable costs …." It also states that the "Legislature finds and declares that the increasing threat of legal actions for alleged medical injury causes and contributes to an increase in health care costs … and that [the AMLA] should be given effect immediately to help control the spiraling cost of health care and to insure [sic] its continued availability." § 6-5-540.

requires a plaintiff to "timely" amend her complaint "upon <u>ascertainment</u> of new or different acts or omissions upon which [her] claim is based." (Emphasis added.) Stated simply, a plaintiff must amend her complaint when she becomes aware of the new or different acts or omissions upon which her claim is based.

Carroll failed to timely amend her complaint with respect to her claim related to the administration of Pitocin against Dr. Garris and Marble City. Carroll had a copy of her medical records and possessed the information required to assert a Pitocin claim when she initially filed her original complaint. And she does not dispute that she ascertained "new or different acts or omissions" relevant to her Pitocin claim during Dr. Garris's and Nurse Skinner's depositions. In fact, as noted above, Carroll admits that Nurse Skinner's deposition revealed "key communications" relevant to her Pitocin claim.

Despite her knowledge, Carroll did not amend her complaint to include a claim related to the administration of Pitocin <u>until 16 months</u> after she became aware of the facts related to the administration of that drug through Dr. Garris's deposition, <u>13 months</u> after she became aware of similar facts through Nurse Skinner's deposition, and after fact

24

discovery had closed. Carroll's new Pitocin claim in her second amended complaint thus came too late, in violation of § 6-5-551.

B. Carroll's New Allegations Concerning the Repair of Her Perineal Tear Were Untimely.

Carroll also alleged in her second amended complaint that "Dr. Garris breached the standard of care in repairing [her] 4th degree perineal tear" because, she said, Dr. Garris should have sought "the assistance of a gynecologic surgeon or general/colorectal surgeon, and the repair should have been performed in an operating room."

The materials before us indicate that, although Carroll's earlier complaints made clear that there was a 4th degree perineal tear resulting from the delivery and that other evidence of the tear was produced during discovery, Carroll did not allege that Dr. Garris breached the applicable standard of care with respect to the repair of her perineal tear until she filed her second amended complaint on July 29, 2024.

We note that the "factual allegations" section in the first amended complaint states that Carroll suffered a "4th degree tear" that required "multiple sutures" to repair and "forms part of the basis for the independent injuries suffered by Rhiannon Carroll," but that complaint did not include a claim against Dr. Garris related to the repair of the

perineal tear. In fact, it said nothing about a breach of the applicable standard of care related to the repair. Section 6-5-551 provides that a complaint must include "a <u>detailed</u> specification and factual description of <u>each act and omission</u> alleged by [the] plaintiff to render the health care provider liable to [the] plaintiff." (Emphasis added.) If Carroll knew of the acts and omissions that formed the basis of this claim when she first brought this suit, she should have included them in her original complaint.[3]

If, however, Carroll did not know of the acts and omissions that formed the basis of this claim when she first brought this suit, she certainly knew of them by the time she was deposed on January 25, 2023.

_____

[3]Marble City and Dr. Garris also argue that the repair of the tear was a separate occurrence and that, therefore, the new allegation (even if it could be added to the complaint) cannot relate back for statute-of-limitations purposes. Our Court has held in the context of a medical-malpractice claim under the AMLA that, when a proposed amendment "altered <u>what occurrence allegedly caused</u> [the decedent's] injuries and <u>what conduct</u> … allegedly exacerbated the occurrence that precipitated [the decedent's] death," the new claims did not relate back and were therefore barred by the AMLA's two-year statute of limitations. <u>See</u>, <u>e.g.</u>, <u>Ex parte Affinity Hosp., LLC</u>, 373 So. 3d 180, 190 (Ala. 2022) (emphasis added). However, we need not reach the issue whether the new allegations in Carroll's second amended complaint relate back to the date of the original complaint, because we conclude that these new allegations are untimely in violation of § 6-5-551.

Indeed, she discussed Dr. Garris's repair of the tear in that deposition, and both Dr. Garris and Nurse Skinner addressed the process for repairing the 4th degree perineal tear in their depositions in March and June of 2023 respectively.

At the very least, Carroll was required at that time, under § 6-5-551, to "timely" amend her complaint to include her claim related to the repair of her perineal tear and the acts and omissions upon which that claim is based. Instead, Carroll waited for <u>17 months</u> before amending her complaint.

Carroll tries to justify this delay the same way she tries to justify her delay with respect to her claim concerning the improper administration of Pitocin against Marble City and Dr. Garris. Specifically, she reiterates her arguments that § 6-5-551 "expressly allows" amendments filed at least 90 days before trial and that her delay was justified because she wanted to collect more evidence so that she could "present a fully substantiated complaint based on the culmination of fact discovery and expert review, consistent with the intent of § 6-5-551." Carroll's answer to Marble City and Dr. Garris's petition at 33. Those arguments are unavailing for the same reasons previously

27

discussed.

### C. Carroll's New Allegations Against Coosa Valley's Nurses Were Untimely.

Finally, in her first amended complaint, Carroll alleged that Coosa Valley's nurses breached the applicable standard of care and that Coosa Valley is liable under the doctrine of respondeat superior. Specifically, Carroll alleged that Coosa Valley's nurses breached the applicable standard of care because, she said, they failed to properly assess the position of the presenting cephalic part during delivery and did not attempt to stop Dr. Garris from applying a vacuum device to assist with the delivery.

In her second amended complaint, however, Carroll added a significant number of factual allegations identifying new acts and omissions to support her argument that Coosa Valley's nurses breached the applicable standard of care. In fact, this section of the complaint more than doubled in length. For instance, in addition to the allegations in Carroll's first amended complaint, Carroll's second amended complaint contains allegations that Coosa Valley's nursing staff "failed to identify, consider in the care plan, and report maternal risk factors associated with shoulder dystocia"; "did not adequately recognize or report

28

symptoms of preeclampsia"; "failed to communicate and collaborate with the physician to provide a plan of care for patient safety, specifically in the prevention of potential seizures"; "failed to recognize and report elevated and severe range blood pressures and did not administer the ordered antihypertensive medication, Hydralazine," which was not documented in the nursing notes; "failed to adequately assess, recognize, and respond to changes in the fetal status," including "persistent Category II fetal heart rate patterns"; "failed to follow written physician orders, including those related to managing Pitocin administration"; did not "appropriately manage Pitocin" given the "presence of a persistent Category II fetal heart rate pattern and uterine tachysystole"; "did not implement intrauterine resuscitation measures when indicated, such as repositioning the patient, administering an IV fluid bolus, or providing oxygen"; and "failed to discontinue or decrease the Pitocin administration" despite the presence of "excessive uterine activity and tachysystole."

Because these new allegations clearly refer to "new or different acts or omissions," they are subject to the "timely" amendment requirement in § 6-5-551. Coosa Valley argues that Carroll's new allegations are

29

based on information that was previously available to Carroll in her medical records, which Carroll obtained before initiating the lawsuit on July 1, 2022. Therefore, Coosa Valley asserts, Carroll had knowledge of the new acts and omissions referred to in her second amended complaint at the time the case was originally filed.

Coosa Valley also argues that Carroll had knowledge of the newly alleged acts and omissions at least a year before she filed her second amended complaint. Specifically, Coosa Valley argues that Carroll's questioning during Nurse Skinner's deposition reveals that Carroll knew of these acts and omissions before Nurse Skinner's deposition and that, at the very latest, Carroll was aware of these new facts at the conclusion of Nurse Skinner's deposition on June 20, 2023.

In support of this argument, Coosa Valley notes that Carroll admitted that Nurse Skinner provided "extensive deposition testimony addressing" the issues of Pitocin administration and preeclampsia management. Coosa Valley's petition at 25. However, Carroll did not file her second amended complaint until July 29, 2024, 13 months after Nurse Skinner's deposition.

Coosa Valley also notes that there was no discovery relevant to

30

Carroll's new allegations against Coosa Valley during the 13-month period between Nurse Skinner's deposition and the filing of Carroll's second amended complaint. Specifically, Coosa Valley notes that the discovery conducted during that time included the second portion of Carroll's deposition, which focused on Carroll's injuries; the deposition of Carroll's husband, which focused on observations during Carroll's pregnancy and her injuries; and the depositions of Carroll's colorectal surgeon and gastroenterologist, who were deposed regarding Carroll's alleged perineal tear and Dr. Garris's repair. Thus, the scope of this additional discovery did not include the "new … acts and omissions" alleged by Carroll against Coosa Valley's nurses. § 6-5-551.

Carroll does not provide an explanation for why she failed to timely amend her complaint after she ascertained these new acts and omissions. Instead, Carroll reprises her general argument that § 6-5-551 permits amendments "if filed at least 90 days before trial." Carroll's answer to Coosa Valley's petition at 24.

Carroll also appears to suggest that she needed time for her experts to review these facts. However, as explained repeatedly throughout this opinion, § 6-5-551 requires timely amendment "upon ascertainment of

new or different acts or omissions upon which [her] claim is based."
(Emphasis added.) Here, the ascertainment of the acts and omissions
underlying Carroll's new allegations occurred at least 13 months before
she amended her complaint for a second time. This does not meet the
timeliness requirements under § 6-5-551.

Carroll also argues that Coosa Valley's own conduct delayed
discovery, contributing to Carroll's delayed amendment. Specifically,
Carroll alleges that, at "the August 2023 status conference, [Coosa
Valley] opposed scheduling, citing incomplete discovery." Carroll's
answer to Coosa Valley's petition at 27. However, there is nothing in the
materials before us that indicates what occurred during the August 2023
status conference that would support Carroll's assertion here. See Ex
parte Guaranty Pest Control, Inc., 21 So. 3d 1222, 1228 (Ala. 2009)
(noting that there is no traditional "record" when this Court considers a
petition for a writ of mandamus, though parties may supplement the
"record" before us if they like). More importantly, in her answer, Carroll
does not explain, and cites no cases to support, why Coosa Valley's
opposition to setting the action for trial in 2023 absolves Carroll of her
responsibility under § 6-5-551 to "timely" amend her complaint "upon

ascertainment of new or different acts or omissions upon which [her] claim is based." (Emphasis added.)

Finally, in a single paragraph without any citations, Carroll acknowledges the additional discovery conducted during the 13-month period between Nurse Skinner's deposition and the filing of her second amended complaint. However, Carroll does not explain how this additional discovery was relevant to Carroll's new claims against Coosa Valley's nurses or why this additional discovery absolves Carroll of her responsibility to "timely" amend her complaint.

In sum, Carroll's new allegations against Coosa Valley's nurses in her second amended complaint are untimely under § 6-5-551. Carroll's second amended complaint refers to significantly more alleged acts and omissions than did her previous complaints to argue that Coosa Valley's nurses breached the applicable standard of care. However, Carroll once again fails to justify why she failed to "timely" amend her complaint "upon ascertainment" of these "new or different acts or omissions upon which [her] claim is based." (Emphasis added.)

## Conclusion

As demonstrated above, the new allegations in Carroll's second

amended complaints were untimely under the requirements set forth in § 6-5-551 of the AMLA because Carroll was aware of the acts or omissions underlying those allegations well before she filed those complaints. As a result, the trial court exceeded its discretion by failing to dismiss the new allegations in Carroll's second amended complaints. We therefore grant the petitions filed by the defendants because they have demonstrated a clear legal right to the relief they are seeking. Importantly, this conclusion does not require dismissal of Carroll's claims in their entirety; the remaining, timely asserted claims may proceed.

Accordingly, we issue a writ of mandamus in case no. SC-2024-0767 directing the trial court to vacate its October 2, 2024, order with respect to Coosa Valley, and to enter an order granting Coosa Valley's motion to dismiss the new allegations in Carroll's second amended complaint. We also issue a writ of mandamus in case no. SC-2024-0770 directing the trial court to vacate its October 3, 2024, amended order with respect to Marble City and Dr. Garris, and to enter an order granting Marble City and Dr. Garris's motion to dismiss the new allegations in Carroll's second

34

amended complaint.[4] The remainder of Carroll's claims shall remain pending in the trial court.

SC-2024-0767 -- PETITION GRANTED; WRIT ISSUED.

SC-2024-0770 -- PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Wise, Sellers, and McCool, JJ., concur.

Shaw and Bryan, JJ., concur in the result.

Mendheim, J., concurs in the result, with opinion.

---

[4]Because we find that Carroll's new allegations in her second amended complaints were untimely under § 6-5-551 of the AMLA, we pretermit discussion of the remaining arguments raised by the parties. See Ex parte Board of Water & Sewer Comm'rs of City of Mobile, 272 So. 3d 635, 638 (Ala. 2018).

MENDHEIM, Justice (concurring in the result).

I write to highlight what I see as a substantial departure from well-established Alabama law regarding amendments to complaints in medical-malpractice actions. Until now, when this Court has addressed whether a plaintiff's amendment to a complaint is proper or timely, it has been within the context of the parameters we have spelled out in relation to Rule 15(a), Ala. R. Civ. P., such as when there is actual prejudice to the defendant or undue delay, see, e.g., Ex parte Taylor, [Ms. SC-2025-0164, Nov. 7, 2025] __ So. 3d __ (Ala. 2025), or in relation to Rule 15(c) and the relation-back doctrine that implicates statutes of limitations. See, e.g., Ex parte Affinity Hosp., LLC, 373 So. 3d 180 (Ala. 2022). This case marks the first time this Court has addressed what constitutes a "timely" amendment under the Alabama Medical Liability Act of 1987 ("the AMLA"), § 6-5-541 et seq., Ala. Code 1975 -- specifically, § 6-5-551, Ala. Code 1975 -- when the plaintiff's amendment occurred more than 90 days before trial.

It is unfortunate that we are drawing this new line using the vehicle of a petition for the writ of mandamus -- and thus expressly concluding that "the trial court exceeded its discretion by failing to dismiss

[Rhiannon] Carroll's second amended complaints" -- even though neither the trial court nor the parties had any previous guidance from this Court with respect to the basis upon which we issue the writs today.[5] __ So. 3d at __.[6] The main opinion justifies utilizing a petition for a writ of mandamus to address the issue before us by citing Ex parte Alfa Mutual Insurance Co., 212 So. 3d 915, 918 (Ala. 2016), which quotes Ex parte Liberty National Life Insurance Co., 858 So. 2d 950, 952 (Ala. 2003), for the proposition that "'[a] writ of mandamus ... will issue to correct a trial court's ruling regarding the amendment of pleadings ... when it is shown that the trial court has exceeded its discretion.'" But the context for that

_____

[5]"'"'[T]here is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right.'"'" Birmingham Hockey Club, Inc. v. National Council on Compensation Ins., Inc., 827 So. 2d 73, 80 (Ala. 2002) (citations and emphasis omitted).

[6]Unsurprisingly, the petitioners do not provide us with any previous precedents that entertained a petition for a writ of mandamus on the basis that a plaintiff's amendment of a complaint was untimely solely based on § 6-5-551 even though "'"[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,"' and '"[t]he writ will not issue where the right in question is doubtful."'" Ex parte Coosa Valley Health Care, Inc., 789 So. 2d 208, 216 (Ala. 2000) (quoting Ex parte Bozeman, 420 So. 2d 89, 91 (Ala. 1982), quoting in turn Ex parte Dorsey Trailers, Inc., 397 So. 2d 98, 102 (Ala. 1981)).

37

proposition in both Alfa Mutual and Liberty National was an amendment to a complaint under Rule 15(a), not under § 6-5-551. Entertaining a petition for a writ of mandamus to evaluate whether a trial court has exceeded its discretion in either allowing or denying an amendment to a complaint under Rule 15(a) has been permitted by this Court since Miller v. Holder, 292 Ala. 554, 297 So. 2d 802 (1974). In other words, trial courts have 50 years of precedent at their disposal to guide their determinations about the timeliness of an amendment under Rule 15(a).

The sentence in § 6-5-551 upon which the main opinion relies has been part of the statute since its adoption in 1987, yet this decision is the first time we have issued a writ of mandamus on the basis that a trial court allowed an amendment that we deem to be untimely solely under that statute.[7] Consequently, today we create a road in mandamus litigation that we have not previously given any indication was available for parties to travel. I anticipate that an increase in the volume of

---

[7]It is all the more perplexing to announce this new standard shortly after all the Justices concurred in granting a petition for a writ of mandamus ordering a trial court to grant a motion to strike a plaintiff's amended complaint in an AMLA action on the ground of "undue delay for purposes of Rule 15(a)." Ex parte Taylor, [Ms. SC-2025-0164, Nov. 7, 2025] __ So. 3d __, __ (Ala. 2025).

mandamus traffic will follow in the wake of this decision given that the main opinion offers no guardrails or analysis for what constitutes a "timely" amendment other than its proclamation that "the ascertainment of the acts and omissions underlying Carroll's new allegations occurred at least 13 months before she amended her complaints for a second time. This does not meet the timeliness requirements under § 6-5-551." __ So. 3d at __.

The main opinion seems to indicate that the reason this case is being decided solely based on the "timely" amendment requirement of § 6-5-551 rather than upon Rule 15(a)'s established standards of actual prejudice and undue delay is that "[t]he AMLA's more specific amendment requirements in § 6-5-551 supplement Rule 15(a)'s more general provisions" and that "[t]o conclude otherwise would make the text of § 6-5-551 a nullity." Id. at __. It is true that, in an AMLA case, the standards we have enunciated under Rule 15(a) "must be evaluated in light of the rights of a defendant and the duties of a plaintiff under § 6-5-551, Ala. Code 1975 ...." Ex parte Taylor, __ So. 3d at __. But it does not follow that electing not to articulate a timeliness standard solely under § 6-5-551 is tantamount to holding that the statute means nothing.

39

Instead, it would indicate a desire to be cautious concerning what the statute itself requires given that the only guidance it provides is that "[t]he plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based ...." § 6-5-551.

Does "timely" mean "immediately"? One would presume it does not because the legislature could have used that word. Black's Law Dictionary defines the word "timely" to mean "[w]ithin a specified deadline; in good time; seasonable." Black's Law Dictionary 1792 (12th ed. 2024). The only specified deadline in § 6-5-551 is that "any such amendment must be made at least 90 days before trial." That deadline is irrelevant to the facts presented in these petitions because Rhiannon Carroll filed her second amended complaints on July 29, 2024, and the trial date was set for April 21, 2025, in the trial court's scheduling order. "In good time" is akin to "a reasonable time," but if that is what "timely" means, it begs the question of how much time is "good" or "reasonable" in a given circumstance? After all, litigation is a relatively slow process of determination. "Seasonable" seems to lack any legal precision.

The generalized nature of the term indicates that whether an amendment is "timely" filed after ascertainment of new or different acts or omissions is within the discretion of the trial court. Cf. Randolph Cnty. v. Thompson, 502 So. 2d 357, 364 (Ala. 1987) ("Since [Rule 24, Ala. R. Civ. P., addressing motions to intervene], itself, is silent concerning what constitutes a 'timely application,' it has long been held that the determination of timeliness is a matter committed to the sound discretion of the trial court."). The dearth of previous precedents on this issue is therefore unsurprising, and the avoidance of enforcing what constitutes a "timely" amendment under § 6-5-551 through petitions for a writ of mandamus has been entirely sensible.

The main opinion states that a delay of 13 months between when Carroll became aware of new or different acts or omissions and when she amended her complaints is unequivocally not "timely" under § 6-5-551. Is 12 months too long, or 6 months, or 3 months? When does the clock start ticking? Is it the moment a plaintiff discovers a single new or different act or omission or is there a threshold of multiple acts or omissions that triggers the starting point because § 6-5-551 uses the plural "acts or omissions" when it discusses the requirement to "timely" amend a

41

complaint? The main opinion answers none of those questions, but the Court can be sure that a string of future petitions for the writ of mandamus will be asking them and others I have not posited. When those petitions are presented, I hope we have a more concrete idea of how to answer such questions than what is provided in today's decision.